[No. 10,141.]

## THE PEOPLE v. LLOYD BELL.

INSANITY AS A DEFENSE IN A CRIMINAL CASE.—Insanity, when relied upon as a defense in a criminal case, is to be established by the prisoner by preponderating proof. It is an issue upon which he holds the affirmative, and he must establish not only the fact of insanity, but insanity arising from such a cause as in point of law, amounts to a defense.

IDEM.—If the question arises as to whether the supposed insanity was the result of intoxication, immediately indulged, or insanity caused by a habitual and long continued use of ardent spirits, the burden is cast upon the prisoner of establishing it to be of the latter character.

CHARACTER OF EVIDENCE IN CRIMINAL CASE.—If, on a trial for murder, the prosecution introduces testimony, showing that colored spots were found on the prisoner's clothes and person, which it claims were blood, it is not obliged to show by scientific analysis, that such spots were blood, but may rely on the opinions of witnesses who saw the spots.

IDEM.—An opinion not expressed by the Court on the point, as to whether if, in such case, the prosecution had caused an analysis to be made, which it purposely withheld from the jury, it would be proper for the Court to call the attention of the jury to that fact.

EVIDENCE OF GOOD CHARACTER.—If there is evidence introduced tending to show the good character of the prisoner as to the traits involved in the charge against him, the jury must take such evidence into consideration for the purpose of determining whether it creates a reasonable doubt of his guilt.

IDEM.—There may be cases where guilt is so clearly proved, that no evidence of good reputation can create a doubt, while there may be other cases in which a good reputation will create a reasonable doubt, but the prisoner has a right to have the jury pass on the question.

IDEM.—It is not sufficient for the Court to instruct the jurors that the good character of the defendant is a circumstance for their consideration, for this is only equivalent to the *admission* of the testimony as to character.

APPEAL from the District Court, Third Judicial District, City and County of San Francisco.

The defendant was charged in the indictment with having, on the 16th day of October, 1873, murdered Owen Gillen by a blow with an ax. The testimony on behalf of the prosecution, showed substantially that one Ryan kept a house on the corner of Clark and Drumm streets, in the city of San Francisco, and that, about two o'clock in the afternoon of the 16th of October, a police officer had his attention directed to the house, and on entering the dining-room back of the bar-room, found Gillen lying on a bench, with his head partly severed from his body. The defendant was in the same room lying on a settee, apparently asleep. He was roused up by the police officer, and appeared stupid, as if intoxicated, and did not give intelligent answers to questions put to him. It further appeared that the deceased, the defendant, and Ryan, had been drinking heavily for some two or three days, and were all three intoxicated in the forenoon of that day. The officers found a pool of blood on the floor; the wall where the deceased lay was bespattered with blood some two or three feet higher than his body, and outside the door leading into the yard, behind a pile of wood, an ax was found, the blade and handle of which were covered with blood. The officers testified that they found spots of blood on the clothes of the defendant and on his hands, but on cross-examination, could not swear positively that the spots on the clothes and hands of defendant were blood, although they looked like blood. The testimony for the prosecution tended to show that the defendant had been on a " spree " for two or three days, and some of the witnesses thought he acted as though he was suffering from delirium tremens. It appeared from the testimony of Ryan, that the deceased and the defendant had a quarrel (in words only), in the forenoon of the 16th, and a boy who had passed Ryan's, had looked in to see the time of day, and heard a noise in the dining-room, and looked through the door and saw a man throw an ax into the yard. The boy thought this man re-

sembled the defendant. The defense relied on a plea of insanity, and also claimed that there was no proof that the defendant committed the act. They introduced evidence to show that the deceased was a heavy drinker, and tending to establish insanity from the use of ardent spirits, and also tending to prove the good character of the defendant for peace and quietness. They also showed by medical men, that blood spots could not be certainly known by the eye.

On the trial, the defendant asked the following instruction to the jury, which was refused by the Court: "If you are satisfied the defendant was insane, did not know what he was doing, or did not know that the act he was doing was wrong and deserved to be punished, then the law does not presume this want of mental sanity arose from any particular cause, as for instance, immediate drunkenness, and it is incumbent on the prosecution, if it claims that it did arise from a particular cause, as immediate and not remote drunkenness, and that the defendant is guilty by law, because it arose from that cause, to make out this necessary element in the charge, to the same extent as every other element in it, namely, by proof beyond a reasonable doubt."

The Penal Code section 22 provides that "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But, whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." The prisoner also asked the Court to give the following instructions to the jury, which were refused.

"If weaker and less satisfactory evidence is offered by the State, when it appears that, if any necessary part of its case were true, stronger and more satisfactory is within the power of the State, such weaker evidence should be viewed by you with distrust."

"If it is in the power of the prosecution to prove to you

whether the spots on the clothes or person of defendant are blood, or are not blood, by scientific analysis, then, if the prosecution fails to prove this to you, you should look on all the testimony of the State as to such marks being marks of blood with distrust."

The jury found the defendant guilty of manslaughter, the Court sentenced him to imprisonment for the term of seven years, and he appealed.

The other facts are stated in the opinion.

*Darwin & Murphy*, for the Appellant.

The instruction which the Court refused in relation to insanity is taken from the McGlue case, 1 Curtis, C. C. 14. There was testimony to make it pertinent. The instructions as to the blood spots should have been given. See Code of Civil Procedure, section 2061, and subdivisions 6 and 7 of the section, and section 1963, subdivision 3.

The instruction as to good character should also have been given. (*People* v. *Ashe*, 44 Cal. 288; *People* v. *Raina*, 45 Cal. 292.)

*Attorney-General Love*, for the People, argued that drunkenness was not a defense, and could only be used to determine the state of mind of the accused so as to enable the jury to fix the degree of the offense, and cited *People* v. *Belenica*, 21 Cal. 544, and that the case of McGlue in 1 of Curtis, was not law in this State, and cited *People* v. *King*, 27 Cal. 507; *People* v. *Nichols*, 34 Cal. 212, and *People* v. *Lewis*, 36 Cal. 531.

By the Court, Wallace, C. J.:

1. Insanity, when relied upon as a defense in a criminal case, is to be established by the prisoner by preponderating proof. It is an issue upon which he holds the affirmative, and before it can be availed of, he is bound to establish not only the fact of insanity, but insanity of the character—*i. e.*, arising from such a cause as in point of law amounts to a defense. If, therefore, as here, there be a question as to whether the supposed insanity was the result of intoxication

immediately indulged, or insanity caused by a habitual and long-continued intemperate use of ardent spirits, the burden is cast upon the prisoner of establishing it to be of the latter character.

2.   There was no error in refusing the instruction asked by the prisoner as to the duty of the prosecution to prove by scientific analysis that the spots found upon the clothes and person of the prisoner were, in fact, spots of blood. If it had appeared, which it did not, that the prosecution had in fact caused such analysis to be made, and that, while it was in their power to submit its results to the jury, they nevertheless purposely withheld it, it might not have been inappropriate to call the attention of the jury to the fact; but this is not such a case, and we express no opinion upon the point.

3.   But we think that the Court below erred in not giving the thirteenth instruction asked by the prisoner. It was as follows:  "If the defendant be proved of good character as a man of peace, such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character."   This instruction embodies a proposition of law clearly correct in itself.   It is in substantial accordance with the ruling of this Court in the case of *The People* v. *Ashe* (44 Cal. 288), and other cases following upon that case.   The instruction was refused by the Court below, "because the Court instructed the jury on the same subject."   It is true that the Court did instruct the jury "on the same subject," but obviously not to the same import or effect.   The substituted instruction referred to by the Court as the reason for refusing the instruction as asked by the prisoner is in the following words:  "The good character of the defendant is a circumstance in the case for your consideration in making up your verdict."

As was well remarked by the counsel for the prisoner in argument here:  "To say that which the Court said is not to add anything to the mere fact of letting the testimony in."   The prisoner had produced to the jury the evidence of several witnesses tending to show that his general char-

acter for peace and quietness of conduct was good; the evidence submitted by the prosecution tending to his inculpation was not direct, but circumstantial in its nature. It is important in every criminal case, and especially so when the inculpatory proof is circumstantial in its character, that the jury should be instructed, if the prisoner so request, that in determining whether or not he is guilty beyond a reasonable doubt, his good reputation, if he have such, as to traits involved in the charge, should be weighed as any other fact established, and that it may be sufficient to create a reasonable doubt as to his guilt. Whether or not, in the particular case in hand, it would do so, was a question for the consideration of the jury in deliberating on their verdict. Of course, it does not follow that the accused is to be acquitted, merely because he has established a good reputation. As we substantially said in *The People* v. *Ashe* (*supra*), there may be cases so made out that no character, however high, can make them doubtful, while there may be other cases in which a high character would produce a reasonable doubt, when without it, the evidence might be considered as establishing guilt beyond a reasonable doubt.

Judgment reversed, and cause remanded for a new trial.

Neither Mr. Justice Crockett nor Mr. Justice Rhodes expressed an opinion.