## EGAN v. UNITED STATES.

(Court of Appeals of District of Columbia.  Submitted December 12, 1922.
Decided March 5, 1923.)

No. 3868.

1. **Criminal law 29—Receiving and agreeing to receive prohibited compensation are separate offenses.**

Under Penal Code, § 113 (Comp. St. § 10283), making it an offense for an officer to receive or agree to receive compensation for service relating to a claim to which the United States is a party, receiving and agreeing to receive the forbidden compensation are separate offenses.

2. **Indictment and information 125(2)—Separate offenses of same character can be charged in same court.**

Separate offenses created by the same statute and of the same character, such as receiving and agreeing to receive forbidden compensation by an officer, or such as asking, accepting, and receiving bribes, may be charged in a single count.

3. **Criminal law 29—Asking, accepting, and receiving money are separate offenses.**

Under Penal Code, § 117 (Comp. St. § 10287), forbidding a public official to ask, accept, or receive anything of value with intent to have his decision influenced thereby, the asking, accepting, and receiving of the money are separate offenses.

4. **Indictment and information 167—Proof need establish only so much of indictment as shows substantive crime.**

Proof of so much of an indictment as shows that defendant committed a substantive crime therein set forth is sufficient, without proof of other allegations in the indictment.

5. **Indictment and information 132(7)—Prosecution need not elect between counts charging offenses of receiving compensation for services with reference to claims and accepting bribes.**

The district attorney cannot be required to elect between counts in an indictment charging defendant as an officer with receiving compensation for services in connection with a claim against the United States, contrary to Penal Code, § 113 (Comp. St. § 10283), and counts charging him with accepting a bribe contrary to section 117 (Comp. St. § 10287), since the crimes defined in those sections belong to the same class, and may be separately charged in a single indictment, and in such a case a general verdict of guilty on all counts will be sustained, if any count is good and sufficient to support the judgment.

6. **Criminal law 510—Uncorroborated testimony of accomplice may sustain conviction.**

A conviction may be sustained on the uncorroborated testimony of an accomplice, if the jury was admonished by the court that such testimony ought to be received with suspicion, and with the very greatest care and caution.

7. **Criminal law 507(1)—"Accomplice" is one who co-operates or aids defendant in committing offense.**

Code, § 908, defining persons who may be charged as principals, and not as accessories, and Penal Code, § 332 (Comp. St. § 10506), making whoever aids, abets, etc., in the commission of an offense a principal, do not fully define accomplices and any one who knowingly and voluntarily co-operates with, aids, assists, advises, or encourages another in the commission of a crime is an "accomplice," regardless of the degree of his guilt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accomplice.]

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Criminal law ⊕⇒507(1)—Giver of bribe is accomplice of receiver.**

The fact that the giver of a bribe is, under Penal Code, § 39 (Comp. St. § 10203), guilty of a separate and distinct offense from the receiver, and must be indicted under a different section does not alter the fact that he is an accomplice of the receiver within the rule governing testimony by accomplices, since he aids and abets the commission of the offense, and it is not necessary that an accomplice may be charged with the same offense as accused.

9. **Criminal law ⊕⇒736(1)—Whether witnesss is accomplice is question for court, if facts are undisputed.**

Though the court will generally leave the determination of the question whether or not the witness is an accomplice to the jury, it will not do so where the facts with reference to his participation are not disputed, but are admitted, in which case it is a question of law for the court whether he was an accomplice.

10. **Criminal law ⊕⇒780(2)—Instructions should call jury's attention to danger of convicting on testimony of accomplice.**

Where a witness admitted the giving of a check to defendant to bribe defendant and testified at length in regard to his negotiations with defendant, much of his testimony being contradicted by defendant and by other testimony and circumstances in the case, it was error to refuse to give a requested charge that the testimony of an accomplice should be received with great care and caution.

11. **Criminal law ⊕⇒561(1)—Every element of offense must be proved beyond a reasonable doubt.**

The government is obliged to prove the case charged in the indictment in every material part beyond a reasonable doubt, and before the jury can lawfully return a verdict of guilty they must find that every element essential to establishing guilt has been so proven.

12. **Criminal law ⊕⇒561(1)—"Reasonable doubt" defined.**

A "reasonable doubt" is such a doubt as will leave the juror's mind, after a candid and impartial investigation of all the evidence, so undecided that he is unable to say he has an abiding conviction of the defendant's guilt, or such a doubt as in the graver and more important transactions of life would cause a reasonable and prudent man to hesitate and pause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Doubt.]

13. **Criminal law ⊕⇒789(1)—Instruction on reasonable doubt held insufficient.**

An instruction on reasonable doubt which opened with an intimation it was unnecessary to state that defendant was presumed to be innocent until found guilty beyond a reasonable doubt, stated that "the presumption is said to be evidence in the case," and failed to give any definition of the term "reasonable doubt," or to make a specific application of the presumption to the case, was insufficient.

14. **Criminal law ⊕⇒776(5)—Instruction on effect of character evidence held not to cover request.**

An involved instruction to the effect that testimony of reputation was to be considered as a fact in the case, that a man was entitled to the benefit of his reputation before the jury, but that all the evidence was to be put together and weighed together, and the jury then make up its mind as to what the proper verdict should be, and that good reputation was no excuse for the commission of a crime, was insufficient to cover a correct requested instruction that the circumstances of the case may be such that an established reputation for good character would alone create a reasonable doubt.

15. **Criminal law ⊕⇒561(3)—Rule that good character may create reasonable doubt as to guilt is especially applicable to bribery.**

The rule that an established reputation for good character may be such as to raise a reasonable doubt that will alone justify an acquittal

is especially true in a case where the relevancy of the evidence is so closely related to the issue of guilt or innocence, as in a charge of bribery, which by its nature implies moral obliquity.

**16. Criminal law ⚖⇒778(2)—Instruction on inferences from absence of witnesses held erroneous.**

A charge commenting on the absence of certain witnesses, and stating that the jury might draw whatever inferences they pleased from the fact that the witnesses were not present to substantiate defendant's testimony, was erroneous, for not stating the inference to be drawn, namely, that if they were present their testimony would be adverse to the defendant or to the government, as the case may be.

**17. Criminal law ⚖⇒778(2)—Instructions should not call attention to absence of witnesses which was not suggested by counsel.**

It was erroneous for the court in its charge, in speaking of comment that had been made on absence of witnesses, to call attention to the absence of two persons as witnesses, where their absence had not been suggested, either by the district attorney or by counsel for the defendant.

**18. Criminal law ⚖⇒317—Inference unfavorable to defendant cannot be drawn from absence of witnesses having no legal relation to him.**

An inference unfavorable to defendant cannot be drawn from the absence of parties as witnesses who had no legal relation to him in the case and were equally available to the government.

**19. Criminal law ⚖⇒834(1)—Instructions given held not to justify refusal of specific prayers.**

Defendant is entitled to have the law of the case clearly and concisely stated to the jury, and it is error to refuse prayers which specifically state the law applicable to a certain branch of the testimony, and substitute therefor a charge which, though it may contain correct principles, is so involved as to tend to confuse rather than enlighten the average juror.

**20. Bribery ⚖⇒10—Exclusion of evidence as to nature of defendant's duties held erroneous.**

In a prosecution against an officer of the United States for accepting a bribe, it was error to refuse to permit defendant to testify that his duties were such that the application for license, with reference to which the alleged bribe was given would not have come before him for action; such testimony not being incompetent because of other testimony as to his duties, which the jury might have disbelieved, if they had had his denial before them.

**21. Criminal law ⚖⇒655(1)—Trial judge should not indicate his personal convictions as to guilt.**

The trial judge should be so impartial in the trial of a criminal case that the jury are unable to detect his personal convictions as to the guilt or innocence of the accused, and his conduct and demeanor may be such as to deprive accused of a fair and impartial trial, even though no single instance involved error so prejudicial as to warrant reversal.

**22. Criminal law ⚖⇒1208(3)—Sentence to imprisonment only under statute imposing fine and imprisonment is illegal.**

Under Penal Code, § 113 (Comp. St. § 10283), providing a punishment by fine and imprisonment for the offense of which defendant was convicted, and a sentence to imprisonment for the maximum term, without the imposition of a fine, is not authorized.

**23. Criminal law ⚖⇒1188—Where erroneous judgment is suspended pending appeal, case may be remanded for resentence.**

Where an erroneous judgment was suspended pending appeal, and the only error in the case was the error in the judgment, the case could be remanded, with direction to resentence the defendant in accordance with the statute.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

William P. Egan, otherwise known as W. P. Egan, was convicted of receiving, as an officer of the United States, compensation for services in relation to a claim in which the United States was a party, and of receiving money with intent to have his decision or action influenced thereby, and he appeals. Reversed and remanded.

T. M. Wampler, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before VAN ORSDEL, Associate Justice, and MARTIN and SMITH, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant, defendant below, a law clerk in the Bureau of Internal Revenue, was indicted under sections 113 and 117 of the United States Penal Code (Comp. St. §§ 10283, 10287). Section 113 provides that:

"Whoever, * * * being the head of a department, or other officer or clerk in the employ of the United States, shall, directly or indirectly, receive, or agree to receive, any compensation whatever for any services rendered or to be rendered to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation. arrest, or other matter or thing in which the United States is a party or directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military, or naval commission whatever shall be fined not more than ten thousand dollars and imprisoned not more than two years."

Section 117 provides that:

"Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof, * * * shall ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value. with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of money or value of the thing so asked, accepted, or received, and imprisoned not more than three years."

The indictment is in four counts. The first two counts charge an offense under section 113. The first count differs from the second only in that the first count charges the receipt of money, and the second count charges the receipt of a check. The third and fourth counts charge an offense under section 117. The third count differs from the fourth in that the third count charges the receipt of money, and the fourth count charges the receipt of a check. The defendant was convicted upon all four counts, and sentenced under the second count to serve two years in the penitentiary.

[1] The indictment was assailed by motion to quash because in each of the counts of the indictment more than one offense is charged. In each of the first two counts the defendant is charged with "receiving" or "agreeing to receive" the forbidden compensation. These

287 F.—61

constitute separate and distinct offenses. In Burton v. United States, 202 U. S. 377, 26 Sup. Ct. 697, 50 L. Ed. 1057, 6 Ann. Cas. 392, the court, construing section 1782, R. S., incorporated as section 113 of the Penal Code, said:

"It was certainly competent for Congress to make the agreement to receive, as well as the receiving of, the forbidden compensation, separate, distinct offenses. * * * There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense. Or compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated."

[2] It is contended that, being separate offenses, they cannot be included in a single count of the indictment. We are not impressed by this contention. Nor do we think it is supported by the decision in the Burton Case. While in that case the offenses were charged in separate counts, there is no intimation that they may not be embraced in a single count. We think it is optional with the pleader to embrace the distinct offenses in separate counts or in a single count. The objection of duplicity to the first and second counts of the indictment was properly overruled.

[3] Section 117 forbids a public official to ask, accept, or receive any money or other valuable consideration with intent to have his decision or action influenced in any matter pending or which may come before him in his official capacity. In the third count defendant is charged with asking, accepting, and receiving money, and in the fourth count with asking, accepting and receiving a check. It is contended that in each count three separate and distinct offenses are charged which cannot properly be included in a single count. The offense condemned is receiving bribes by a public official. While different offenses are set out in the statute, they may, for the same reason as in section 113, be embraced in a single count, since the proof may well establish either the receiving, the soliciting, or the acceptance of the bribe by the official. They all relate to a single substantive crime.

In Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, the court considered a similar objection, where a defendant had been charged, under section 5421 of the Revised Statutes (Comp. St. § 10193), making it a criminal offense for any one to, falsely make, alter, forge, or counterfeit any deed, power of attorney, order, certificate, receipt, or writing, for the purpose of obtaining, receiving, or enabling any other person either directly or indirectly to obtain or receive from the United States any sum of money. The statute also prohibited any person from transmitting or presenting, or causing or procuring to be transmitted or presented, to any person or any officer of the government, any of the documents above enumerated knowing the same to be forged, altered, or counterfeited. The court, holding that the numerous acts forbidden by the statute could be embraced in a single count, said:

"We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that Congress intended to reach was the obtaining of money from the United States by

means of fraudulent deeds, powers of attorney, orders, certificates, receipts or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished. * * * We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute."

[4] It is a settled rule in criminal law that proof of so much of an indictment as shows that defendant committed a substantive crime, therein set forth, is sufficient. A count in an indictment charging that the defendant broke and entered a shop with the intention of committing larceny, and did commit larceny, was not defective for duplicity. Commonwealth v. Tuck, 20 Pick. (Mass.) 356. The charge that defendant set up and promoted a certain exhibition without a license was sufficiently set forth in a single count. Commonwealth v. Twitchell, 4 Cush. (Mass.) 74. Likewise a charge in a single count that defendant burned and caused to be burned a building was sustained. State v. Price, 11 N. J. Law, 203, 215. The rule announced by Chitty is as follows:

"If an indictment charge that the defendant did, and caused to be done, a particular act, it is enough to prove either. Thus, under an indictment for forgery, stating that the defendant forged, and caused to be forged, it suffices to prove either." 1 Chitty's Cr. Law, 251.

[5] There was no error in denying a motion to require the district attorney to elect whether he would go to trial upon the first and second counts or the third and fourth counts of the indictment. This motion was based upon the theory that the indictment included two separate offenses under the Penal Code. This is permissible, and election will not be required, where the offenses charged are not distinct and inconsistent. The crimes defined in sections 113 and 117 belong to the same class, and may be separately charged in a single indictment. In such a case a general verdict of guilty on all the counts will be sustained in error, if any count is good and sufficient to support the judgment. Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Davis v. United States, 37 App. D. C. 126, 133.

Error is assigned upon the refusal of the court below to charge the jury on the law of accomplices. The person alleged to have given the bribe in this case was the principal witness on behalf of the government. Counsel for defendant offered the following prayer:

"The court instructs the jury that the witness Joseph Dudenhoefer is an accomplice, and that his testimony should not be received by the jury as that of an ordinary witness, but ought to be received with suspicion and with the very greatest care and caution."

The court, refusing all the prayers offered on behalf of the defendant, said:

"I will refuse them all, except as charged. I will charge on presumption of innocence, I will charge on the burden of proof, and I will charge

on the question of reputation. I won't give the charge at all on the matter of accomplices."

[6] In many jurisdictions the law forbids the conviction of an accused upon the uncorroborated testimony of an accomplice. But in this jurisdiction such a conviction may be sustained, provided the jury is admonished by the court that the testimony of an accomplice "ought to be received with suspicion, and with the very greatest care and caution." Freed v. United States, 49 App. D. C. 392, 394, 266 Fed. 1012, 1014.

[7] We have no legislative definition of an accomplice. Section 908 of the District of Columbia Code provides:

"In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories."

This, however, does not fully meet the case. Nor is section 332, Penal Code U. S. (Comp. St. § 10506), providing that "whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal," conclusive on this point. The broader and more comprehensive rule is that any one knowingly and voluntarily co-operating with, aiding, assisting, advising, or encouraging another in the commission of a crime is an accomplice; and this is true, regardless of the degree of his guilt. 1 Russell's Crimes, 49; Wharton's Criminal Evidence, 440; Rice's Criminal Evidence, § 319; Bishop's Criminal Procedure, § 1159.

[8] The mere fact that the giver of a bribe, under the statutes of the United States (Penal Code, § 39 [Comp. St. § 10203]), is guilty of a separate and distinct offense from the receiver, and must be indicted under a different section of the Criminal Code, is beside the case. We cannot approve the fallacious reasoning of a few courts (State v. Durnam, 73 Minn. 150, 75 N. W. 1127) that a person who concededly aided in the commission of the crime, as in the instant case, is not an accomplice, unless he can be indicted for the same crime as the accused. We are rather in accord with the unanswerable reasoning contained in the opinion in People v. Coffey, 161 Cal. 433, 119 Pac. 901, 39 L. R. A. (N. S.) 704, where the court, considering the exact question before us, the relation of the giver of a bribe to the receiver, said:

"One is an accomplice in a crime because of the part that he has taken in it, not because he may be indicted as a principal. The latter is a mere accidental circumstance, depending upon the language of the statute, and in no way affecting the true touchstone, namely, the part which the witness has taken in the offense. * * * The law to-day declares that the giver of a bribe may be punished for the giving; that the officer who receives a bribe may be punished for the receiving. A. offers B. a bribe and by this means advises and encourages the commission of a crime. B., in turn, consults his friend C., who 'advises and encourages' B. to accept the bribe. B. returns to A., and agrees to A.'s corrupt proposition, and A. pays the bribe money. C. is admittedly an accomplice. He has advised and encouraged B. in the commission of a crime, but A. has done precisely the same thing, and has gone further than B., in that he has not only advised and encouraged, but has become a party to the

criminal agreement. By what logic or reasoning may it be said that C. is an accomplice and A. is not? Not because of the accidental circumstance, if such circumstance exist, that A. can be charged with another crime growing out of the same acts; not because of the accidental circumstance, if it exist, that A. cannot be charged with the same crime as B., for these *are* purely accidental circumstances and are not of the essence of the consideration. At common law the accomplice could not be indicted for the same crime, yet he was none the less an accomplice. The declaration that one *is* an accomplice if he can be indicted for the same crime charged against the defendant on trial is perfectly sound; but the converse of the declaration—namely, that if he cannot be indicted for the same crime, he is *not* an accomplice—is the merest sophistry, which, ignoring the true test and meaning of the word, seeks to turn shadow into substance. * * * If a man has committed a crime, if he has aided and abetted in its commission, if he has advised or encouraged its commission, he is an accomplice with all other participes criminis."

Wherever two or more persons engage in the commission of a crime, each will be held guilty to the extent of his participation. This is true, whether they may be prosecuted under the same statute or different statutes. In all such cases, where two or more persons co-operate in the commission of crime, or two or more are essential to the commission of a crime, as in the present case, they are accomplices, and it is error for the court to refuse to charge the jury that the testimony of one against the other, because of its self-incriminating character, must be closely scrutinized and received with great care and caution.

The reasoning advanced in the Coffey Case is not in conflict with the former rulings of this court. Yeager v. United States, 16 App. D. C. 356, 361; Thompson v. United States, 30 App. D. C. 352, 363, 12 Ann. Cas. 1004; Jackson v. United States, 48 App. D. C. 269, 271. In the Yeager Case the defendant was charged with sexual intercourse with a girl under 16 years of age. The girl, being incapable of consenting to the act, could not, of course, be an accomplice. The crime was committed against her consent. She was the victim. She was therefore incapable of becoming an accessory or aiding and abetting in its commission. In the Thompson Case the defendant was charged with procuring the miscarriage of a woman, and the court, following the Yeager Case, held that the woman "is regarded as his victim, rather than an accomplice." In the Jackson Case the defendant was indicted for keeping a bawdyhouse, and it was, of course, held that certain witnesses who were inmates of the house were not accomplices.

While it is stated in the Thompson Case, commenting on the ruling in the Yeager Case, that "liability to indictment, under ordinary conditions, is a reasonable test of the legal relation of the party to the crime and its perpetrator," this is not the only test, as pointed out in the Coffey Case. It is merely an accidental circumstance "depending upon the language of the statute, and in no way affecting the true touchstone, namely, the part which the witness has taken in the offense." The most recent utterance of this court in Freed v. United States, supra, is in full accord with the reasoning in the Coffey Case, which, we think, is the better and more liberal rule to be ap-

plied in jurisdictions, especially, where the accused may be convicted upon the uncorroborated testimony of an accomplice.

[9, 10] It is a general rule that, when a question of accomplice arises in the trial, the court will instruct the jury touching the law of accomplices, and leave the determination of the question of whether or not the witness is an accomplice to the jury. This, however, only applies when there is a dispute as to whether or not the witness did in fact do the thing, which, if admitted, would make him an accomplice. But if, as in the present case, the fact of giving the check by the witness is not in dispute, but admitted, it is a question of law for the court to say whether or not the giving of the check makes the witness an accomplice. But the admission of the giving and receiving of the check did not obviate the necessity of an instruction on the law of accomplices. Such an instruction might have been omitted, had the testimony of Dudenhoefer been confined exclusively to the admission; but it was not. He testified at length in regard to his negotiations with defendant, much of which is contradicted by defendant and the other testimony and circumstances in the case. As to all of his testimony the jury should have been cautioned to receive and consider it as coming from an accomplice, with all the restrictions which the law imposes upon the credibility of such a witness.

While there is no absolute rule of law preventing convictions on the testimony of accomplices, if juries believe them (1 Bishop's Cr. Procedure [2d Ed.] § 1081), it is undoubtedly the better practice, and the one followed in this District, to call the attention of the jury to the danger of convicting without supporting or corroborating evidence (Freed v. United States, 49 App. D. C. 392, 266 Fed. 1012).

Prayers were requested to the effect that the guilt of the defendant must be established by the evidence to the satisfaction of the jury beyond a reasonable doubt, and also a prayer defining reasonable doubt. These, with the other prayers, were denied, and the court charged the jury as follows:

"Gentlemen of the jury, it is unnecessary for me to say to you that the defendant is presumed to be innocent until you find beyond a reasonable doubt that he is guilty. That presumption is said to be evidence in the case, and it is to be and remain with him throughout your entire deliberations, until you reach, as I say, the conclusion, if you do, that he is guilty. Of course, you must, in order to reach the conclusion that the defendant is guilty, be satisfied beyond a reasonable doubt of the existence of those facts which are said to constitute the essential facts of the crime and each and every essential element, so called, of the crime must be proved to you beyond a reasonable doubt on the evidence in the case before you can find the defendant guilty. Of course, if you have any doubt, after you have considered the evidence, then he is entitled to the benefit of the doubt.

"Now, when I say each and every essential fact must be proved beyond a reasonable doubt, I do not mean by that that you must believe each and every thing that has been testified to separately as an item, for instance, each and every thing that was said in the conversation, or was done by anybody, but what I do mean is that, believing whatever you do believe about the evidence in the case, and believing the testimony that you do believe in the case, that which you do believe has been proved before you, must satisfy you beyond a reasonable doubt of his guilt. You

might believe everything conceivably in some cases that every witness has said. You may believe some things that a witness says and disbelieve other things, or you may reach the conclusion that you will not believe anything that he says. But the residuum, after you get through weighing the case, if you find enough in the evidence to believe and that enough satisfies you beyond a reasonable doubt of his guilt, then your verdict should be guilty."

[11] A mere glance at the foregoing charge discloses its failure to specifically enlighten the jury on the law of reasonable doubt. The government is by law burdened with the obligation of proving the case set out in the indictment, in every material part, beyond a reasonable doubt; and before the jury can lawfully return a verdict of guilty they must find that every element essential to establishing guilt, has been so proven. The law demands acquittal, unless every material and necessary fact upon which a conviction depends is proven, to the satisfaction of each individual juryman, beyond a reasonable doubt.

[12] The charge totally fails to define what constitutes reasonable doubt. To what purpose is it to tell the average juryman that he must be satisfied from the evidence of the guilt of the accused beyond a reasonable doubt without some intelligent statement of its meaning? A reasonable doubt may be defined to mean such a doubt as will leave the juror's mind, after a candid and impartial investigation of all the evidence, so undecided that he is unable to say that he has an abiding conviction of the defendant's guilt, or such a doubt as in the graver and more important transactions of life, would cause a reasonable and prudent man to hesitate and pause.

[13] The charge as given was not expressed in the concise and positive manner in which a long-established legal proposition, expressive of the humanity of the law and so vital to the protection of the accused, should be impressed upon the minds of the jury. It opened with an implied doubt in the mind of the court of the necessity of even intimating that a defendant is presumed to be innocent until he is found guilty beyond a reasonable doubt. The force of the legal presumption of innocence was weakened by the statement that the "presumption is said to be evidence in the case." Said by whom? Not the court, nor even an implication that the proposition meets the approval of the court. The fair inference from the remark is that the trial judge is not giving his view of the law, but merely expressing the opinion of an undisclosed authority. The idea conveyed is that it is given to the jury for what it is worth, to be followed or ignored, not important which course is adopted. It is error to convey to a jury great fundamental principles of law, essential to the protection of the citizen accused of crime, in such an indefinite manner as to nullify its importance in the minds of the jurors.

"Vague generalities addressed to a jury cannot supply the place of specific instructions. The very purpose of instructions is to direct the attention of the jury specifically to the matters relied on by the parties, and to remove the subject of controversy from the domain of vague generality. Thorwegan v. King, 111 U. S. 549; United States v. Bank of the Metropolis, 15 Pet. 377. Of course, the judge was not bound to give the instructions requested by the defendant in the precise terms in which they were re-

quested. But when a prayer for instructions is presented to a trial judge, and the prayer itself is sound in law and applicable to the testimony in the case, it is error in him not to instruct the jury in some sufficient form specifically, and not by vague generalities, upon the precise point to which the instruction is directed, if it is a material point in the case." District of Columbia v. Gray, 1 App. D. C. 502, 506.

[14] Counsel for defendant offered the following prayer:

"The jury are instructed that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing."

This prayer was denied. The court charged on this point as follows:

"While I think that I should say, and so say to you, that the testimony in regard to reputation, if you believe it, is to be taken into consideration, as a fact in the case, together with all the other facts in the case, and weighed with those facts in order to enable you to reach a fair and proper conclusion, a man is entitled to the benefit before the jury of a good reputation, if he bore one, for honesty, etc., just as he is entitled to the benefit of any other fact which may be favorable to him in the case, but all to be put together and weighed together, and then the jury makes up its mind what the proper verdict should be. But, of course, you must always understand that a good reputation is no excuse for the commission of a crime. It is no palliation for it. If you believe, considering reputation and everything else, that the man is guilty, the fact that he has borne a good reputation is not an excuse."

The defect in the court's charge is that it does not respond to the proposition of law contained in the prayer requested, namely, that reputation of good character may be such as alone will create a reasonable doubt, where, without it, all the other evidence in the case would be convincing. This sort of a charge was criticized in Edgington v. United States, 164 U. S. 361, 365, 17 Sup. Ct. 72, 73 (41 L. Ed. 467), where the court said:

"It is impossible, we think, to read the charge without perceiving that the leading thought in the mind of the learned judge was that evidence of good character could only be considered if the rest of the evidence created a doubt of defendant's guilt. * * * Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

It will be observed that the prayer offered is in the identical language of this opinion, announcing the law and condemning an instruction as equivocal as the one contained in the charge of the court below.

[15] The rule thus announced is generally concurred in by the courts, that evidence of an established reputation for good character may be such as to raise a reasonable doubt that will alone justify an acquittal. Especially is this true where, as in this case, the relevancy of the evidence is so closely related to the issue of guilt or

innocence. · Proof of the high character and integrity of one indicted for larceny, forgery, embezzlement, or bribery, offenses which in their nature imply moral obliquity, may well create such a reasonable doubt as to justify acquittal, notwithstanding the convincing character of the other evidence in the case. State v. Brown, 39 Utah, 140, 115 Pac. 994, Ann. Cas. 1918E, 1; People v. Elliott, 163 N. Y. 11, 57 N. E. 103; People v. Bell, 49 Cal. 485; People v. Shepardson, 49 Cal. 629; People v. Doggett, 62 Cal. 27; Shropshire v. State, 81 Ga. 592, 8 S. E. 450; People v. Jackson, 182 N. Y. 66, 74 N. E. 565; People v. Hughson, 154 N. Y. 153, 47 N. E. 1092; Commonwealth v. Eckerd, 174 Pa. 137, 34 Atl. 305; Grabowski v. State, 126 Wis. 447, 105 N. W. 805; Newsom v. State, 107 Ala. 133, 18 South. 206; State v. Birkey, 122 Iowa, 102, 97 N. W. 980; Commonwealth v. Leonard, 140 Mass. 473, 4 N. E. 96, 54 Am. Rep. 485; Howell v. State, 124 Ga. 698, 52 S. E. 649; People v. McArron, 121 Mich. 1, 79 N. W. 944.

In the Brown Case the court, in a very able review of the law on this point, said:

"To tell the jury that they should consider good character in connection with all the other evidence in the case is, as stated by the California courts (People v. Bell, 49 Cal. 485), not telling them anything beyond letting in the evidence. * * * A mere charge which admonishes the jury to consider good character in connection with all the other evidence, and which directs them that if, on a consideration of all of it, including good character, they entertain a reasonable doubt of guilt, to acquit the accused, is not charging the jury on the rules or principles of law applicable to evidence of good character, or stating the object or purpose for which it may be considered, its sufficiency as evidence to support a reasonable doubt of guilt, or the legal effect which the jury in their judgment may give to it."

[16] Exception was taken to the following portion of the court's charge:

"There has been some comment here upon the absence of witnesses. It is said that the archbishop is not here and not accounted for. Well, for whatever weight you want to give to the fact of his absence, you may give, but of course Commissioner Kramer is not here either, and whatever weight you want to give to the fact of his absence, and to the fact of the absence of Dr. Adams, I believe the man's name is, with whom the defendant says he went with the archbishop, the bishop, and the two complaining witnesses, so to speak, those men are not here. The two complaining witnesses, whatever their names are, I forget, say that they were not upstairs with the archbishop and the bishop. The defendant says they were. But what the defendant says about the archbishop not being here, you are to draw certain inferences, so you may draw whatever inferences you please about the fact that Mr. Kramer and Mr. Adams are not here to substantiate the defendant's story."

[17, 18] This portion of the charge is misleading, and does not announce the law in reference to absent or unaccounted for witnesses. It does not state what inferences the jury may draw from their absence, namely, the presumption that, if they were present, their testimony would be adverse to the defendant or the government, as the case may be. We think it was erroneous for the court to call attention to the absence of Kramer and Adams, inasmuch as their absence had not been suggested, either by the district attorney or by counsel

for the defendant. Nor do we think that any presumption against defendant could be indulged because of their absence, had the matter been properly before the court.

"The general rule is that no such inference may be drawn by a jury because a party fails to call as a witness one who is in a legal sense a stranger to him and is equally available to the other side. Jordan v. Austin, 161 Ala. 585, 50 South. 70; Cullum v. Colwell, 85 Conn. 459, 83 Atl. 695; State v. Fitzgerald, 68 Vt. 125, 34 Atl. 429; Wood v. Agnostines, 72 Vt. 51, 47 Atl. 108; Briody v. The Persian Monarch (D. C.) 49 Fed. 669; The Oregon, 133 Fed. 609, 629, 68 C. C. A. 603." Hayden v. New York Railway Co. (N. Y.) 134 N. E. 826.

These parties had no legal relation to defendant in this case, and were equally available to the government.

[19] These are but samples of other portions of the charge where the court indulged in vague generalities, instead of specifically stating the precise point to which the instruction was directed. The defendant is entitled to have the law of the case clearly and concisely stated to the jury, and it is error to refuse prayers which specifically state the law applicable to a certain branch of the testimony, and substitute therefor a charge which, to the legal mind, may contain the correct principle, but so involved in its verbiage as to tend to confuse rather than enlighten the average juror. While it is undoubtedly within the power of the trial judge to deny all prayers offered, and charge the jury upon the law of the case, the exercise of that power places the counsel at a great disadvantage, in that he is compelled to argue the case without the advantage of any expression from the court relative to the law as it will be given in the charge to the jury. The method pursued in many of the states, of court and counsel settling the instructions before argument, is a most commendable practice, fair to all parties, and much less likely to result in error than where the charge is given orally.

[20] In the course of the trial, defendant was testifying as to the nature of the duties which he was required to perform in his official capacity, and also to the character of claims and matters that would be referred to him in the general course of his work, when the following colloquy between the court and counsel occurred:

"Q. What character of claims were those that you refer to in your testimony? A. Such claims—

"The Court (interposing): What difference does it make what the defendant did at any time? The question is whether he was in that department as a law clerk. Is not that the question?

"Mr. Bilbrey: If your honor pleases, it seems to me it was a question of whether he might have done it.

"The Court: Whether anything was sent in there or was not sent in there of any particular kind, I cannot see that it makes any particular difference. As I understood Mr. Van Buren's testimony, it was that he, Mr. Van Buren, was at the head of the legal division there. Mr. Lloyd at any rate testified that that was the division to which all questions of law were referred. I understand that Mr. Egan was a law clerk there. Now, that he did or did not get this, that, or the other kind of case, as a matter of fact makes no difference under the statute; if as law clerk he might have gotten those things, or anything to do with permits, then it comes within section 117 of the statute.

"Mr. Wampler: And your honor sustains the objection to that question?

"The Court: Yes.

"Mr. Wampler: May I have an exception to your honor's ruling?

"The Court: Yes.

"And thereupon the defendant offered to prove, if the witness were permitted to answer, that he would testify that they were claims which had nothing to do with the granting or issuance or revoking of permits for the sale or manufacture of intoxicating liquor."

The exclusion of this testimony was prejudicial error, since it went to the very heart of the charges contained in counts 3 and 4 of the indictment, under section 117 of the Penal Code. The offense there consists in an official receiving compensation in a matter which may come before him for determination in his official capacity. Hence it was competent for him to testify as to whether or not the application for license, filed in this case, might or could come before him for determination. It is wholly immaterial what other witnesses may have testified to on this point. Had defendant been permitted to testify, the jury might have accepted his testimony and rejected that of the other witnesses, and accordingly found him not guilty on the third and fourth counts of the indictment. Inasmuch, however, as defendant was sentenced under the second count of the indictment, for an offense under section 113 of the Penal Code, it is unnecessary for us to consider whether the exclusion of this evidence was so prejudicial in itself as to require reversal, since for other errors the judgment will have to be reversed, and the case remanded for a new trial. To prevent its recurrence, we deem it important to call the attention of the court to the error here committed.

[21] Numerous other exceptions were noted to the conduct of the trial judge in ruling upon the admissibility of evidence and commenting thereon in the presence of the jury. In other words, these exceptions challenge the demeanor of the judge toward defendant. While there is perhaps no single instance involving error so prejudicial as to warrant reversal, we are convinced that, considered as a whole, the rights of defendant were so prejudiced thereby as to deprive him of that fair and impartial trial which the Constitution and the law of the land accords to every citizen accused of the commission of crime. The trial judge should be so impartial, in the trial of a criminal case, that by no word or act of his may the jury be able to detect his personal convictions as to the guilt or innocence of the accused.

[22] Objection is made that the punishment imposed is not that authorized by the statute, and that the judgment is therefore void. Appellant was sentenced to the penitentiary for a term of two years. Section 113 of the Penal Code, under which defendant was sentenced, provides a punishment by fine of not more than $10,000 and imprisonment for not more than two years. It is the rule in the courts of the United States that the judgment in a criminal case must conform strictly to the statute, and that any variation from the provisions of the statute, either in the character or extent of the punishment inflicted, renders the judgment void. Harman v. United States (C. C.) 50 Fed. 922.

'In Woodruff v. United States (C. C.) 58 Fed. 766, 768, the court, considering a sentence for an offense for which the statute provided imprisonment for not less than six months nor more than ten years and a fine of a sum equal to the amount embezzled, said:

"The sentence in this case was one of imprisonment only, and not imprisonment and fine, as required by the statute. In the courts of the United States the rule is well settled that a judgment in a criminal case must conform to the requirements of the statute, and that any variation therefrom, either in the character or extent of the punishment inflicted, avoids the judgment. Ex parte Karstendick, 93 U. S. 396; In re Graham, 138 U. S. 461, 11 Sup. Ct. 363; Ex parte Lange, 18 Wall. 163; In re Mills, 135 U. S. 263, 10 Sup. Ct. 762; In re Johnson, 46 Fed. 477; Harman v. U. S., 50 Fed. 921; In re Pridgeon, 57 Fed. 200."

[23] In the present case, inasmuch as the judgment is suspended pending appeal, if this were the only error in the case, it could be remanded, with direction to resentence the defendant in conformity with the provisions of the statute. In re Christian (C. C.) 82 Fed. 199. Since there must be a new trial, this error is adverted to, in order that it may be avoided in the future.

The judgment is reversed, and the cause remanded for a new trial.