James L. **STEWART**, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 20983.

United States Court of Appeals
District of Columbia Circuit.

Argued March 21, 1968.

Decided Feb. 10, 1969.

Supplemental Opinion July 10, 1969.

---

7. *See* Adams v. United States, 133 U.S. App.D.C. 137, 413 F.2d 411 (May 8, 1969) (special concurring opinion of Fahy, J.)

Mr. George M. Coburn, Washington, D. C. (appointed by this court), with whom Mr. Geoffrey T. Keating, Washington, D. C., was on the brief, for appellant.

Mr. William G. Reynolds, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys. were on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

### PER CURIAM:

This appeal, from a conviction of robbery,[1] presents but two issues requiring elaboration.[2] The first is whether a pre-arrest identification confrontation between the complainant, Robert W. Tanner, and appellant was violative of due process. The second is whether the trial court erred in refusing appellant's request for a missing witness instruction in regard to a person who supplied information leading to the identification.

On the night of July 1–2, 1966, Tanner visited several clubs in downtown Washington, where he had a steak and approximately six drinks, and about 2:00 a. m. started driving toward his home in Maryland. Feeling drowsy, he parked his car at a street curb and fell asleep with the engine running and the lights on. A few minutes later, a man, subsequently said to be and hereinafter referred to as appellant, asked if he was well and then slid into the front seat as two other men climbed into the back. Appellant suggested that they have a beer and Tanner drove the car to a point beside the Anacostia River. There the four men drank beer together and chatted until Tanner stated that he had to get home, offering to drop his companions off on the way.

En route, appellant directed Tanner to pull over to the curb where, Tanner's testimony continues, appellant and at least one of the others began hitting him and tearing off his watch. To forestall the attack, Tanner handed over his mon-

---

1. D.C.Code § 22–2901 (1967 ed.).

2. Appellant's other arguments are without merit. The delay in preparing the trial transcript has not yet brought prejudice to appellant, see Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) at n. 9; Blunt v. United States, 131 U.S.App.D.C. 306, at 310, 404 F.2d 1283, at 1290 (1968) and the trial court's instructions defined the element of specific intent sufficiently to enable the jury to intelligently apply the law to the evidence.

ey clip. The robbers then absconded, and Tanner immediately drove to a nearby service station and telephoned the police. He fixes the time of the call at about 2:30 a. m.

Officers Fitzpatrick and Simons arrived on the scene soon thereafter and wrote down descriptions of the three assailants.[3] In the police car, the officers and the complainant then cruised the Anacostia River area and the neighborhood of the crime. At approximately 3:45 or 4:00 a. m., about an hour and a half after the robbery, they observed three men on foot who matched the descriptions Tanner had furnished. As the police car pulled alongside, the trio walked under a street light, and appellant and another man started to run, chased by the officers but to no avail. In flight, appellant dropped a watch and a money clip, later identified as Tanner's down a tree well. The third member of the group, one Williams, did not attempt to flee, but submitted to arrest and gave the officers appellant's name and address.

The officers, Tanner and Williams then proceeded to the address, only half a block from the place where Tanner had fallen asleep in his car and just around the corner from the scene of the robbery. After a knock on the door and a request to see "James Stewart," appellant appeared in the doorway and was immediately identified by Tanner as one of his assailants. Appellant also answered Tanner's description of the man that had awakened him.[4]

At the trial, the Government's case rested largely on Tanner's testimony. Tanner identified appellant in the courtroom as one of the robbers and testified to the pre-arrest confrontation. One of the officers also made an in-court identification, stating that just before the arrest he recognized appellant as the man he chased. Appellant, through his grandmother and a friend, presented an alibi defense which the jury did not accept. Williams, the party whose information led directly to appellant's initial identification and arrest, was not called as a witness.

I

Appellant urges that, within the doctrine of Stovall v. Denno,[5] the confrontation at his house with the complainant was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." [6] His appeal thus presented vitally the question whether the complainant's testimony as to the confrontation and his in-court identification were inadmissible.[7] To clarify specific applications of *Stovall*, this court *en banc* recently considered three cases, captioned *Clemons v. United States*,[8] dealing with cognate issues and, pending the decision in *Clemons*, we deferred disposition of the case at bar.

*Clemons* teaches that constitutional requirements regarding pre-*Stovall* pretrial confrontations are met by a showing either (a) that the confrontation was not so unduly suggestive as to amount to

---

3. According to Officer Fitzpatrick,
 Mr. Tanner described three Negro males. One he described as being slim, approximately six-foot tall, with chin whiskers, wearing a white tee shirt and khaki trousers. The second was a Negro male, about five feet eight; he had on a blue and white striped sweater and dark trousers. The third had on dark trousers—dark pants—and a white B-Bop hat.

4. He was the man first described in note 3, *supra*.

5. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

6. *Id.* at 302, 87 S.Ct. at 1972.

7. The confrontation—and trial—having taken place before United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) were decided, appellant cannot argue that he had a Sixth Amendment right to counsel when so identified. Stovall v. Denno, *supra* note 6. See also Borum v. United States, 133 U.S. App.D.C. 147, 409 F.2d 433 (1967).

8. *Supra*, note 2.

a violation of due process or (b) that "the record provides an independent source for [the] identification" such "that we can justifiably regard that identification as not fatally tainted by the [illegal] exposure."[9] We need not probe for the second exhibition because the record provides sufficient information to assure that the confrontation was not unnecessarily suggestive,[10] a conclusion we reach "on the totality of the circumstances surrounding it."[11] We noted in Wise v. United States[12] that the "presentation of only one suspect, in the custody of the police, raises problems of suggestibility that bring us to the threshold of an issue of fairness."[13] While appellant, when first identified by Tanner, was not in police custody, the confrontation here, particularly with the prior accusation of a supposed accomplice, presents quite similar problems. Appellant argues that, in order to avoid these problems, the police officers should have come to his house, arrested him if he fit Tanner's description, and held a lineup the next day.

■ Appellant's suggestion has appeal, but there are factors of greater potency on the other side. Considerations of fairness to the suspect and of efficiency in police operations have inclined us in the past to uphold single-suspect confrontations "proximate to the scene and time of the offense as well as the apprehension."[14] Here Tanner viewed appellant at his home, simultaneously with his apprehension, only minutes after Tanner last saw the man carrying the loot, and about two hours after the crime. Such prompt observations promote fairness to the accused by allowing a viewing by the victim while his mental image of the perpetrator is still fresh.[15] The time of the identification, around 4:00 in the morning, underscores the importance of this factor, for in all probability there would be a considerable delay in organizing a formal lineup.[16] Such a delay would also have led necessarily to the arrest and overnight detention of an innocent suspect, and the interruption of a pressing search for the real criminal, if Williams had given the police a false lead to protect his accomplices.[17] These circumstances in the aggregate persuade us to hold that the confrontation was not unnecessarily suggestive, and so not a violation of due process.[18]

In reaching this conclusion without consideration of the reliability of Tanner's observation, we have abided *Clemons'* admonition that, in pre-*Stovall* confrontations, reliability bears on whether the identification had an independent source—an issue we need not reach—and not on whether the confrontation violates due process.[19] In cases, like here, where

---

9. *Id.* 133 U.S.App.D.C. at 47, 408 F.2d at 1250. See also *id.* 133 U.S.App.D.C. at 45, 408 F.2d at 1248.

10. Compare *id.* 133 U.S.App.D.C. at 46, 408 F.2d at 1249; Young v. United States, 132 U.S.App.D.C. 257, 407 F.2d 720 (1969); Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968).

11. Sovall v. Denno, *supra* note 5, 388 U.S. at 302, 87 S.Ct. at 1972.

12. *Supra* note 10.

13. *Id.* at 282, 383 F.2d at 209.

14. *Id.*

15. *Id.*; Young v. United States, *supra* note 10, 132 U.S.App.D.C. at 258, 407 F.2d at

721; Bates v. United States, *supra* note 10, 132 U.S.App.D.C. at 37–38, 405 F.2d at 1105–1106. See also Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969).

16. Compare Russell v. United States, *supra* note 15, 133 U.S.App.D.C. at 80–81, 408 F.2d at 1283–1284.

17. Bates v. United States, *supra* note 10, 132 U.S.App.D.C. at 38, 405 F.2d at 1106. See also Russell v. United States, *supra* note 15, 133 U.S.App.D.C. at 81, 408 F.2d at 1284.

18. See the cases cited notes 11–17, *supra.*

19. Clemons v. United States, *supra* note 3, 133 U.S.App.D.C. at 45–47, 408 F.2d at 1248–1250. See Russell v. United States, *supra* note 15, 133 U.S.App.D.C. at 81–82, 408 F.2d at 1284–1285.

an identification is admissible, it is for the jury to assess its evidentiary value in view of complainant's fatigued and possibly inebriated state.[20] These clouds on the reliability of complainant's identification do, however, heighten the importance of testimony that Williams might have given at the trial.

## II

Appellant also contends that the trial judge erred in not instructing the jury, in compliance with his request, that it could permissibly infer from the Government's failure to call Williams as a witness that his testimony would have been unfavorable to the Government. Such an instruction is proper where "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction."[21] The trial judge, however, neither gave the instruction nor formally passed on appellant's request.[22]

Williams, appellant's alleged accomplice, undoubtedly could have shed a great deal of light on the matters in issue at the trial. And if indeed he had testified adversely to the Government, the jury's verdict might well have been different. The record, however, reveals little about Williams' "availability," whatever that word might imply in this case. We instructed, in Wynn v. United States,[23] that the rendition of a missing witness instruction must await an informed decision that the absent witness is peculiarly available to the side against which the instruction is asked.[24] It clearly follows that absent some other reason for refusing the instruction, the trial judge must inquire suitably into the witness' availability.

Here the trial court learned from defense counsel that he had made unsuccessful efforts of undetermined extent to ascertain Williams' whereabouts. But despite some indication from the prosecutor that Williams was amenable to production by the Government, the inquiry drifted away to requests for other instruction without any sort of determination as to whether either party could produce Williams.

On this appeal neither party has recognized this deficiency. Each argues on the assumption that, with due effort, the other could have brought Williams into court. Thus appellant contends that Williams' cooperation with the police in identifying and locating appellant rendered him, in a practical sense, peculiarly available to the prosecution. The Government urges contrarily that availability is primarily a matter of ability to produce by subpoena.

Appellant's position draws considerable support from cases decided outside this jurisdiction.[25] We ourselves have

---

20. See the cases cited *supra* note 19; Bates v. United States, *supra* note 10, 132 U.S.App.D.C. at 38, 405 F.2d at 1106.

21. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). See also *e. g.*, Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (Nov. 16, 1967).

22. The only reason hinted in the record for the omission of the missing witness instruction was a statement by the trial judge that "it may be more detrimental to the defendant because the testimony is that the three of them were together." But see Pennewell v. United States, 122 U.S.App.D.C. 332, 333, 353 F.2d 870, 871 (1965).

23. *Supra* note 21.

24. *Id.* 130 U.S.App.D.C. at 64, 397 F. 2d at 625. See also Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969).

25. See the cases cited in Richards v. United States, 107 U.S.App.D.C. 197, 202–203, 275 F.2d 655, 660–661 (dissenting opinion), cert. denied 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960); 2 J. Wigmore § 288, at 73–74 (1964 Supp.). Thus,

"It has been well said that 'the availability of a witness is not to be determined from his mere physical presence at the trial or his accessibility for the service of a subpoena upon him. On the contrary, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony

encountered the problem in some degree [26] and in Richards v. United States,[27] on the facts there, reached a conclusion favorable to the Government. On the other hand, we have indicated that in different circumstances another conclusion might be indicated.[28] The parties' briefs do not focus upon our prior decisions in this context, and we have no information whatsoever as to Williams' relationship with either the Government or appellant subsequent to the time of the latter's arrest.

The question whether the requested missing witness instruction was appropriate in this case is susceptible of firm resolution only upon full information as to Williams' availability to the parties, practically as well as physically. We accordingly remand this case to the District Court, retaining jurisdiction in the meanwhile, in order that such information may be developed and transmitted to us in the form of a supplemental record. Within 15 days after receipt of the supplemental record, the parties may file supplemental briefs addressed to the problems to which we have adverted.

So ordered.

## SUPPLEMENTAL OPINION

### PER CURIAM:

At the hearing on remand, it developed that the prosecuting attorney had caused to issue a subpoena requiring the attendance of Williams, the missing witness, at appellant's trial, but that the subpoena had been returned marked "not to be found." Such an unsuccessful attempt, of course, would ordinarily indicate that the witness was unavailable, and so would dispel any adverse inference otherwise proper.[1] Appellant charges that the Government's effort was "last minute" and "lackadaisical,"[2] but does not dispute that, however so it may have been, it was a bona fide endeavor to put Williams on the witness stand.

 This is enough to fatally undercut any claim appellant might have had to a missing witness instruction. The theory authorizing that instruction is that "[t]he nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause."[3] Not only was there a decision by the Government to produce Williams as a witness but also an effort in good

that he might be expected to give in the light of his previous statements or declarations about the facts of the case.'"
McClanahan v. United States, 230 F.2d 919, 926 (5th Cir. 1956), citing Deaver v. St. Louis Pub. Serv. Co., 199 S.W.2d 83, 85 (Mo.App.1947).

26. Pennewell v. United States, *supra* note 22; Billeci v. United States, 87 U.S.App. D.C. 274, 279, 184 F.2d 394, 399, 24 A. L.R.2d 881 (1950); Milton v. United States, 71 App.D.C. 394, 397, 110 F.2d 556, 559 (1940); Egan v. United States, 52 App.D.C. 384, 396, 287 F. 958, 970 (1923).

27. Richards v. United States, *supra* note 25, 107 U.S.App.D.C. at 200, 275 F.2d at 658.

28. See cases cited note 26, *supra*.

1. See Boyer v. The Merry Queen, 202 F. 2d 575, 578 (3d Cir. 1953); Schumach-

er v. United States, 216 F.2d 780, 787–788 (8th Cir. 1954), cert. denied 348 U.S. 951, 75 S.Ct. 439, 99 L.Ed. 743 (1955); Muhleisen v. Eberhardt, 21 So. 2d 235, 237 (La.App.1945); Martinez v. State, 165 Tex.Cr.R. 244, 306 S.W. 2d 131, 132 (1957); 2 J. Wigmore, Evidence § 286 (3d ed. 1940).

2. The charge, in substance, is that the subpoena was not requested until the Friday before the Monday on which the trial began, and that, after service could not be obtained on that Friday at Williams' address on record—a vacant house —no effort was made to find another address for him. Compare Pennewell v. United States, 122 U.S.App.D.C. 332, 333 n. 3, 353 F.2d 870, 871 n. 3 (1965).

3. 2 J. Wigmore, Evidence § 285 at 162 (3d ed. 1940) (emphasis in original omitted).

faith to do so. We perceive no basis for the inference or for the instruction appellant requested,[4] and the judgment appealed from is accordingly

Affirmed.

Senior Circuit Judge BASTIAN did not participate in this supplemental opinion.

4. Compare People v. Gutierrez, 128 Cal.App.2d 387, 275 P.2d 65, 67 (1954).