134 So.2d 655 (1961)
Robert D. STERLING et al.
v.
Charles S. McKENDRICK.
No. 27.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1961.
Rehearing Denied December 4, 1961.
*656 Cobb & Wright, Lloyd J. Cobb, New Orleans, for plaintiffs-appellees.
Felicien Y. Lozes, New Orleans, for defendant-appellant.
Before McBRIDE, REGAN and YARRUT, JJ.
YARRUT, Judge.
This appeal is being prosecuted by the administratrix of the succession of defendant, who passed away after judgment was rendered against him in the District Court, in favor of plaintiffs, each for $2,125, with legal interest and costs. The amount allowed plaintiffs was the recovery of a payment made by them to defendant as their proportion of the cost of drilling an oil well under a joint lease, which plaintiffs contend was never drilled. The reasons given by the District Judge for his judgment were:
"It was admitted by defendant herein that the amount sued for by plaintiffs was paid to defendant as plaintiffs proportionate cost of the drilling of an oil well which was never drilled. The evidence clearly shows that at the time defendant accepted plaintiffs money any right which defendant may have had to drill the subject oil well had already expired, and the record is barren of any proper evidence that defendant at any time thereafter ever had, or acquired, the right to drill the said well. The fact is that under the contract, by virtue of which the defendant claims to have had the right to drill an oil well on the property, the said well was required to have been drilled and completed by December 15, 1956 (1955), and defendant accepted the amount sued for after said date."
After filing an exception of nonjoinder of one Robert W. O'Meara (referred to hereinbelow), which was overruled, defendant answered that the sums paid by plaintiffs to him were in connection with the operations on an oil lease held jointly by O'Meara, plaintiffs and defendant; that plaintiffs and O'Meara directed that defendant forego operations on their contemplated shallow well, in order to acquire additional acreage and thereby materially increase their holdings; that said additional acreage was acquired in the name of O'Meara only and is subject to a lawsuit in the Federal Court; that the payment made by plaintiffs was their just proportion of the expenses incurred in preparing for the drilling on their shallow well, their lease on which was lost for failure to drill and complete by the fixed date, December 15, 1955.
The only parol testimony was given by defendant, first called for cross-examination by plaintiffs, and then examined in his own behalf. Neither plaintiff appeared to testify in person or by deposition. From the documentary evidence, letters and unimpeached testimony of defendant, the following facts seem clearly to have been established:
Defendant and O'Meara were colessees of a lease to drill for minerals in Plaquemines Parish, La., O'Meara owning a 42.875 per cent interest. Plaintiffs acquired an undivided one-fourth interest in the 42.875 per cent ownership of O'Meara. Defendant had a farm-out contract, dated November 1, 1955, which required that he drill a well to a depth of 2,500 feet not later than December 15, 1955. Plaintiffs, defendant and O'Meara all agreed that they would each pay their part of the expense incurred as colessees in drilling the well. Plaintiffs by letter (December 13, *657 1955) admitted this obligation and sent their respective checks for $2,125 to defendant.
O'Meara and defendant, with the knowledge and consent of plaintiffs, delayed the drilling of the 2,500 foot well on the prospect of being able to obtain from Stanolind (their lessor) the deep rights on a much larger tract of land in this same area. The deep rights were more valuable and not suggestive of litigation, as was the smaller area. Plaintiffs were informed of, and assented to, a discontinuance of the operations to drill the shallow well in order to obtain the additional acreage and deep rights.
Defendant's unimpeached testimony is that he had actually expended in excess of $17,000 in the dredging of a canal leading to, and partially located on, the leased acreage preparatory to, and necessary for, drilling a well. No dispute arose until the negotiations to acquire the additional acreage fell through, when O'Meara obtained those rights in his own name alone.
From his written reasons it is clear that the Trial Judge reached the conclusion that defendant accepted plaintiffs' money after the loss of the right to drill the shallow well and before actual drilling had begun, hence plaintiffs are entitled to a return of their money. Defendant's expenditures in preparation of the drilling went without objection from his colessees. Defendant, O'Meara and plaintiffs gambled on the probability of obtaining the deep rights and abandoned drilling a shallow well to share in greater profits. Defendant's unrefuted testimony and the exhibits clearly indicate plaintiffs' knowledge, consent and approval to the entire transaction, particularly the discontinuance of the shallow well.
Plaintiffs' sole contention is that they were not liable for any expense of defendant, since no well was actually drilled. They were colessees and depended upon defendant. Any preliminary steps taken in preparation for the drilling of the well, before it was discontinued with the knowledge and consent of all parties, in the hope of acquiring a better lease from their lessor, must be considered as costs of drilling the well, such as surveyor's fee for locating the acreage, cost of dredging a canal to permit access for the actual drilling, even though part of the canal was located on other land.
What constitutes the drilling of a well between lessor and lessee is governed by the terms of the lease; if not specific, the general rule seems to be that the location of a well, hauling lumber on the premises, providing water supply, and similar acts preliminary to the beginning of the drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute drilling operations. Summers Oil and Gas, Vol. 2, p. 459, § 349.
This rule should be applied to colessees who agree to share the cost of drilling a well, where the lessee, charged with the drilling operations, acts in good faith and with the full knowledge of his colessees, even though the lease is lost for failure actually to drill, through no fault of the colessee in charge. Texas Company v. O'Meara, 228 La. 474, 82 So.2d 769.
Plaintiffs' counsel contends there is nothing in the record, except defendant's testimony, to show that plaintiffs were ever informed or assented to the discontinuance of operations for which plaintiffs advanced to defendant the monies sued for. The reason is that plaintiffs saw fit not to testify.
The correspondence clearly shows that, at the inception of this transaction, Mr. Sterling was informed by defendant of the hope of obtaining the deep rights. Defendant's letter of December 17, 1955, and Sterling's undated reply both make reference to the 4,000 foot well. The lease under which O'Meara and defendant were colessees before O'Meara sold the one-fourth interest to plaintiffs, referred to a 2,500 foot well, whereas plaintiffs' letter, enclosing the check for their pro rata cost, specifically refers to the drilling of a 4,000 foot well. *658 Obviously, plaintiffs must have been informed of the abandonment of the 2,500 foot well and the attempt to obtain the farm-out for the 4,000 foot well. Plaintiffs were mailed a copy of a letter dated April 22, 1956, reciting that: "Mr. Sterling was in here the other day and I informed him of our status." This is documentary proof that plaintiffs, through Mr. Sterling, were informed, yet offered no objection to the discontinuance of the shallow well in the hope of obtaining deep rights on the greater acreage.
Neither party to a lawsuit is required to summon his adversary as a witness, but has the right to assume his adversary will be present at the trial. The failure of one to call his adversary for cross-examination cannot be construed against him as obtains where a party fails to produce a witness material to his case, who is under his supervision or control. It is optional with one party to examine his opponent before or during trial, and no presumption arises for his failure to exercise this right.
There was ample opportunity for plaintiffs to testify, by deposition or in court, to contradict defendant's testimony and the documents offered in evidence. To permit recovery from defendant of the money voluntarily invested as a colessee in this enterprise, which, unfortunately, failed, would improperly saddle the burden upon defendant. As colessees plaintiffs owed defendant their quarter share of the expenses in developing it. This they voluntarily and properly paid.
It is true that defendant wrote on January 4, 1956, that he was delayed in the drilling due to his inability to secure a drilling rig at that time of year, but he was primarily delayed prior thereto, by the concurrence of plaintiffs and O'Meara in the suspension of drilling while seeking other acreage. There is no charge of negligence or fraud on the part of defendant, who was acting for himself, plaintiffs and O'Meara.
The contention of plaintiffs' counsel that co-owners or colessees are not coadventurers is correct. However, when they agree among themselves that a certain thing be done in behalf of all, designating one of them to do it, and agree to share the cost, each is liable for his pro rata, unless the one designated has been guilty of negligence, omission or commission in the execution of his delegated authority.
The District Court ordered defendant to refund the payments made by plaintiffs, on the ground the well was not actually drilled and only the actual cost of drilling was chargeable to plaintiffs. In this we disagree, because any expense in the necessary preparation for the actual drilling, without which the drilling could not begin, must be borne proportionately by the colessees, who had agreed to share the "drilling expense."
For the reasons assigned, the judgment of the District Court is reversed and judgment rendered in favor of defendant as now represented by his administratrix, and against plaintiffs, dismissing plaintiffs' suit, at their cost in both courts.
Reversed and rendered.