Cleveland **BURGESS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21745.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1969.

Decided Dec. 29, 1970.

Spottswood W. Robinson, III, and Robb, Circuit Judges, filed concurring opinions.

228

Mr. Steven R. Rivkin, Washington, D. C. (appointed by this Court) for appellant.

Mr. Robert C. Crimmins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. Julius A. Johnson, and Miss Carol Garfiel, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellant was indicted and convicted on six counts charging violations of the narcotic laws. The first three counts grew out of three phases of a transaction involving heroin alleged to have been engaged in by appellant on March 22, 1967: (1) the sale, barter, exchange, and giving away of the drug not in pursuance of a written order;[1] (2) its purchase, sale, dispensing, and distribution not in or from the original stamped package;[2] and (3) facilitating its concealment and sale after its knowing importation into the United States contrary to law.[3] The three additional counts charged the same violations involving transactions in heroin on March 24, 1967. Upon conviction as charged appellant was sentenced to five years on each of the violations of Section 4705(a) and Section 174, and one to three years for each violation of Section 4704(a), all sentences to run concurrently. This appeal followed.

The principal evidence was that of a federal narcotics agent, Collins, who testified that on each of the two dates appellant sold him 100 capsules of heroin without a written order form and with no tax stamps affixed to the capsules or to any package containing them. According to the officer, each sale was witnessed by a Government informer, Daniel Cole (Cox).[4] The foregoing was the substance of his direct testimony.

Three other federal agents testified. One of these agents said that on March 22 he was parked in the vicinity of the restaurant where the transaction as testified to by Agent Collins occurred, and saw appellant arrive, enter, and leave the restaurant. He testified further that on March 24 he was similarly parked near the restaurant and saw appellant drive up, alight momentarily, wave to Collins, and that Collins and the informer joined appellant in the latter's car. Another agent gave similar testimony concerning the event of March 22, and concerning March 24 he placed Collins and the informer together as entering the restaurant before appellant arrived and leaving together and entering his car, later departing in the car. He said that in trailing the three in appellant's car he saw appellant "hold his hand back like this (indicating) over the seat and I observed Agent Collins join hands with him." Somewhat similar testimony as to the events on the two dates was given by still another agent, but he said he did not see anything that was illegal.

The informer was not called as a witness. During the trial his name and a

---

1. 26 U.S.C. § 4705(a).

2. 26 U.S.C. § 4704(a).

3. 21 U.S.C. § 174.

4. The appellant and the Government are in disagreement as to the informer's name.

former address were furnished by the prosecution to defense counsel.

The defense was an alibi. Three witnesses testified they had gone to New York City with appellant during the period of the alleged transactions to see the Cassius Clay-Zora Folley prize fight. Appellant did not testify.

## I

A principal contention of appellant on appeal is that the convictions on the two counts charging facilitating the concealment of heroin knowingly imported contrary to law, 21 U.S.C. § 174, must be reversed because the court instructed the jury, as permitted by that section of the statute, as follows:

> Now, it is provided by law that whenever on trial for a violation [of this section] the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

It is contended that this instruction, which is phrased in the exact language of the statute, violates due process of law and the Fifth Amendment privilege against compelled self-incrimination.

At the time this case was submitted to our court, there was pending and undecided in the Supreme Court the case of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), involving a similar due process contention. We accordingly suspended decision so as to be guided by the Supreme Court. In its decision in *Turner*, since rendered, the Court upheld, where heroin is the drug involved, the constitutionality of the statutory provision referred to above as the basis for the instruction objected to by appellant on due process grounds. The Court held:

> Whether judged by the more-likely-than-not standard applied in Leary v. United States, [395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)], or by the more exacting reasonable-doubt standard normally applicable in criminal cases, § 174 is valid insofar as it permits a jury to infer that heroin possessed in this country is a smuggled drug. If the jury relied on the § 174 instruction, it was entitled to do so.

396 U.S. at 416, 90 S.Ct. at 652. Given this fact, the Court continued, together with the class of people who have regular contact with a drug which they know cannot be legally bought or sold, there is "little doubt that the inference of knowledge from the fact of possessing smuggled heroin is a sound one." *Id.* at 417, 90 S.Ct. at 653. We accordingly hold that the instruction in this case, like that in *Turner,* does not violate due process.

As to the additional contention that the instruction, with its statuory authority, coerces the accused to testify and thereby to expose himself to further prosecutions, due to the need to explain "possession to the satisfaction of the jury," the Supreme Court held in *Turner* that as the inference from possession was sound the court's instruction on the inference "did not place impermissible pressure upon him to testify in his own defense." *Id.* at 418, 90 S.Ct. at 653, citing Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 69 L.Ed. 904 (1925). Appellant was not required to acknowledge possession. And if he was not in a position to deny it, the pressure on him to attempt to justify having the heroin, with possibly incriminatory results, arose from an inference which the Court in *Turner* held was permissible, not from compulsion prohibited by the Fifth Amendment.[5]

---

5. We are likewise unable to accept the claim that the instruction amounts to a comment upon the accused's failure to testify, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and therefore discourages his exercise of the constitutional privilege against self-incrimination, *cf.* United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (1968). *See* United States v. Gainey, 380 U.S. 63, 70–71, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); United States

## II

■ We turn now to the convictions under Section 4704(a), that is, on the two counts of the indictment covering the alleged transactions of March 22 and March 24, charging the unlawful purchase, dispensation, or distribution of heroin not in or from the original stamped package, which are here challenged on due process and Fifth Amendment grounds.

Section 4704(a) provides that "the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found." This "prima facie" evidence weight given to such possession is said by appellant to violate due process. But it too was sustained in *Turner*. The Court said:

> Those possessing heroin have secured it from some source. The act of possessing is itself sufficient proof that the possessor has not received it in or from the original stamped package, since it is so extremely unlikely that a package containing heroin would ever be legally stamped. * * * Since heroin is a high-priced product, it would be very unreasonable to assume that any sizable number of possessors have not paid for it, one way or another.

v. Turner, 404 F.2d 782, 784–785 (3d Cir. 1968), aff'd in part and rev'd in part, Turner v. United States, *supra.*

As to appellant's argument that the presumption from possession, by relieving the prosecution of the responsibility of proof, denies him the right to a trial by jury, the *Turner* decision, by sustaining the validity of the presumption, by necessary implication is dispositive.

6. It should be noted that the Government's proof, independently of the statutory inference, was designed to show that appellant sold heroin without the appropriate stamps, whereas the inference complained of, according to *Turner*, can be sustained only as it relates to the purchase by appellant of the drugs without stamps, and could not authorize an inference of illegal sale. 396 U.S. at 421, 90 S.Ct. 642.

Turner v. United States, *supra,* 396 U.S. at 421–422, 90 S.Ct. at 655.[6]

Section 4704(a) is also challenged on the ground of compelled self-incrimination for substantially the same reasons presented in appellant's attack on Section 174. Here again the decision of the Supreme Court in *Turner* is dispositive. The Court there held that the statutory scheme of Section 174, involving the inference that Turner knew the heroin had been unlawfully imported, did not place impermissible pressure upon him to testify in his defense. The statutory scheme of Section 4704(a), involving the inference from possession that heroin was not purchased from the original stamped package, likewise places no impermissible pressure upon him to testify in his own defense. The whole of the statutory plan of Section 4704(a), we think, cannot be distinguished from that upheld in *Turner*.

## III

■ This leaves for consideration appellant's challenge of the convictions on the two counts charging violation of 26 U.S.C. § 4705(a), requiring transfers of heroin to be made pursuant to an official order form, on the ground that if he were fully and literally to comply with this and other statutory provisions, he would be required to incriminate himself in violation of the Fifth Amendment privilege.[7] We cannot agree. The Court

But *Turner* also recognized that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." 396 U.S. at 420, 90 S.Ct. at 654.

7. Appellant argues that, apart from the unconstitutionality of Section 4705(a) when considered alone, that section when considered with Section 4704(a), relating to the tax stamps, forms part of a comprehensive regulatory scheme which is violative of his privilege against self-incrimination because of the requirement of registration and taxation for activities prohibited by federal and state laws. We find nothing in the fact that Section 4705 (a) is part of a statutory scheme with

in Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), decided since appellant's brief was filed with us, held against this attack on the statute. For reasons therein elaborated the Court held that "the seller faces no risk of incrimination by reason of § 4705(a) since there will be and can be no order form involved" when a seller deals with buyers who have failed to register or cannot register because dealings in the drug are illicit. *Id.* at 97, 90 S.Ct. at 289. As in Minor's case, since it is clear appellant's customer was not a registered buyer, the possibility of incrimination was purely hypothetical, leaving for appellant, if he is to achieve full and literal compliance with Section 4705(a), only one alternative—not to sell.

Appellant's several attacks on the statutes under which he was convicted accordingly must be decided against him, leaving only the question concerning a missing witness instruction.

### IV

Appellant also contends that prejudicial error occurred in the refusal of the court to instruct the jury that from the failure of the Government to call the informer as a witness they could infer that his testimony would be unfavorable to the Government—the so-called missing witness instruction. We are agreed, but not altogether for the same reasons, that we must affirm notwithstanding

such an instruction was not given. My reasons are now set forth, in which Judge Robinson concurs except to the extent stated in his separate opinion. Judge Robb agrees that the missing witness instruction was properly denied for the reason stated in his separate opinion.

 A. The rule authorizing the inference referred to is applicable, in the language of the Supreme Court, when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to do so. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); [8] *see* Stewart v. United States, 135 U.S.App.D.C. 274, 418 F.2d 1110 (1969); Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1967).

The Government counters that appellant waived any right he might have had to the instruction when he twice refused the trial court's offer to reopen the case for a hearing to determine the informer's peculiar availability. As I read the record, however, the offer to reopen went no further than to tender to defense counsel an opportunity to seek the informer by subpoena, based on the circumstance that the prosecution had supplied counsel with an address where several weeks before trial the informer might have been located. Counsel declined the offer, coming as it did after he had closed the defense.[9]

---

Section 4704(a) which raises any question with respect to the Fifth Amendment privilege which we have not discussed.

8. The passage in *Graves* often relied upon reads:

The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.
150 U.S. at 121, 14 S.Ct. at 41.

9. The following colloquy between court and defense counsel took place in this connection:

[Defense Counsel]: If Your Honor please, I respectfully submit that in the light of the testimony concerning this witness and his whereabouts, it would be a futile gesture for me to issue or to request a subpoena for his appearance in this court.

THE COURT: I don't believe so. I would be willing to re-open the case right now at your request.

[Defense Counsel]: Fialkewicz very candidly said, "I don't know where he is now. I know where he was a month ago."

██ I do not think appellant can be said to have waived whatever right he had to the instruction. The testimony showed a relationship between the Government and the informer which placed it peculiarly within the power of the Government to produce him if we are to give any meaning to the idea expressed by the term "peculiarly." The informer was associated with the Government in the development of the case. He participated in bringing appellant into conflict with the narcotic laws. Nothing indicates any break in the association. While it was quite proper for the Government to furnish defense counsel with such information as it could as to the whereabouts of the informer, this created no obligation on the defense to seek the witness by subpoena. Richards v. United States, 107 U.S.App.D.C. 197, 275 F.2d 655, cert. denied, 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960), does not require a different holding as to the availability of the informer. In *Richards* the dissenting opinion of Chief Judge Bazelon explains factors which support my position, and the majority opinion rests upon factors not present in our case. Richards unsuccessfully sought a ruling that a possible witness who was a special employee of the Police Department was for that reason peculiarly available to the Government; but the employee had been placed by Richards' defense as having committed the offense for which Richards was on trial. This substantially diluted if it did not eliminate the right of Richards to urge the special employee's peculiar availability to the Government; as the court pointed out, his testimony, while not a part of the Government's case in chief, was important to Richards' own version of the facts.

██ The Government also contends that the instruction was properly denied because the informer's testimony would have been merely cumulative. *See* Brown v. United States, 134 U.S.App.

D.C. 269, 270–271 n.2, 414 F.2d 1165, 1166–1167 n.2 (1969); Morton v. United States, 79 U.S.App.D.C. 329, 332 n.11, 147 F.2d 28, 31 n.11, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945); 2 Wigmore, Evidence § 287 (3d ed. 1940). The informer's testimony would have been cumulative in such a case as this only if we assume, contrary to the very rule under consideration, that the informer's testimony would have been favorable to the Government. Aside from this the informer's testimony could hardly have been cumulative; according to Collins the informer was present during both transactions. He was a natural witness for the Government and clearly was in a position to elucidate the transactions.

Having said so much, I nevertheless conclude that the court was not required to give the missing witness instruction. The language of the Supreme Court in *Graves,* note 8 *supra,* relied upon as authority for such an instruction, grew out of a prosecution in which the trial court had permitted the United States over objection to argue to the jury that Graves' wife, shown by testimony as possibly having been with him when he might have committed the crime, should have been by his side during the trial, although under the applicable law she was not competent to be a witness at the trial of her husband. Holding that in allowing such comment the trial court fell into reversible error, the Supreme Court said:

> It was in fact as if the court had charged the jury that it was a circumstance against him that he had failed to produce his wife in court.

150 U.S. at 121, 14 S.Ct. at 41. Indicative of what the Court had in mind is its quotation from Commonwealth v. Webster, 5 Cush. 295, 316, as follows:

> But when pretty stringent proof of circumstances is produced tending to support the charge, and it is apparent

THE COURT: I will be willing to re-open the case at your request right now.

[Defense Counsel]: No, Your Honor. I have no request at this time. I have rested my case.

that the accused is so situated that he can offer evidence of all the facts and circumstances as they existed, and show, if such was the truth, that the suspicious circumstances can be accounted for consistently with his innocence, and he fails to offer such proof, the natural conclusion is that the proof, if produced, instead of rebutting, would tend to support the charge.

150 U.S. at 120–121, 14 S.Ct. at 41.

Clearly, however, the Court was not laying down a rule of broad or rigid application whenever an adversary fails to call a witness peculiarly within his power to produce who might have some knowledge of the facts involved. Thus the Court in *Graves* continued:

> But this presumption does not apply to every fact in the case which it may be in the power of the defendant to prove. He is not bound to anticipate every fact which the government may wish to shew in the course of the trial, and produce evidence of that fact.

*Id.* at 121, 14 S.Ct. at 41.

■ The Court had no occasion in *Graves* to refer to the difference between an instruction of the court and independent comment by counsel. It is of some interest also that the Supreme Court has never cited *Graves* in connection with a missing witness rule. Notwithstanding the development of the rule in this and other courts in reliance upon *Graves*, the Supreme Court in that case did not deprive trial courts of considerable latitude in applying the rule, guided by the importance of the possible witness to a fair elucidation of the facts as well as by a rational interpretation of when a party has the power to produce him. Not every absent but producible witness who can be held to have some knowledge of the facts need by reason of *Graves* be made the subject of the "presumption." [10]

There is only one relevant passage in a subsequent Supreme Court decision. It appears in Mr. Justice Jackson's opinion in United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948), where *Graves* is not cited. The Government had not called an informer named Reed in aid of its case. The informer had been present in an automobile along with Di Re, who was charged with having engaged in a conspiracy involving counterfeit ration coupons. Di Re was said to have acted or spoken in Reed's presence in a way which supported the existence of the conspiracy. Upon review of Di Re's conviction, Mr. Justice Jackson said:

> Reed, the informer, certainly knew it if any part of his transaction was in Di Re's presence. But he was not called as a witness by the Government, nor shown to be unavailable, and we must assume that his testimony would not have been helpful in bringing guilty knowledge home to Di Re.

The Court did not go so far as to say, however, that it must assume Reed's testimony would have been adverse to the Government, but only that it would not have been helpful, which quite likely is often all that can be assumed. The majority opinion in our *Richards* case, *supra,* in commenting upon one of the instructions there considered, also supports the view that not every witness whose testimony might in some sense elucidate the transaction can be inferred to be unfavorable when he is not called by the party to whom he is peculiarly available; and the dissenting opinion in *Richards* is not inconsistent with this position. *See* 2 Wigmore, Evidence §§ 286–87 (3d ed. 1940) & § 288 (Supp. 1964); McCormick, Evidence § 249 (1954); Brown v. United States, *supra,* and cases there cited, including Morton v. United States, *supra,* and Pennewell

---

10. The *Graves* language is in terms of a "presumption," whereas the rule as it has developed, in this respect departing from *Graves*, is now generally expressed as authorizing a permissible inference.

■

Moreover, *Graves* had reference to a situation where the presumption was adverse to the defense. The present rule operates as well in favor of the defense.

v. United States, 122 U.S.App.D.C. 332, 353 F.2d 870 (1965).

When the court is asked to give the instruction, then, a judgment is to be reached as to whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one. In reaching its decision the court will have in mind that it is not ruling upon an offer of evidence. The missing witness instruction is not evidence, but is concerned with the absence of evidence. While the context in which the question arises may clothe the missing witness with significance, there is the danger that the instruction permitting an adverse inference may add a fictitious weight to one side or another of the case. When thus an instruction is sought which in a sense creates evidence from the absence of evidence, the court is entitled to reserve to itself the right to reach a judgment as wisely as can be done in all the circumstances,[11] even when the general guidelines based upon *Graves* are found to be supported by the evidence.[12]

Returning to the facts of this case, it is difficult as a matter of common sense to conclude that because the Government did not call the informer the jury should have been instructed that they could infer his testimony would have been unfavorable to the Government. There may have been other reasons why he was not called. The Government may simply have thought it well enough to submit the case on the testimony of the agents, all of whom placed appellant at the scene they described, and to leave it to the jury to decide whether as thus submitted the proof, without more, was convincing enough. The informer might have been thought a poor witness, though not an adverse one.

Though he might not have been helpful to the Government, the failure of the Government to put him on the stand did not authorize an inference, supported by an instruction, that if he testified he would have done so unfavorably to the Government.

B. The denial of the instruction, however, was accompanied by denial also of counsel's request for the right in any event to urge the unfavorable inference upon the jury. The trial judge would have permitted the argument, though denying the instruction, except he felt bound by our statement in Wynn v. United States, *supra,* 130 U.S.App.D.C. at 64, 397 F.2d at 625:

[W]e have outlawed both comment [21] and instruction [22] as to absent witnesses where either of these conditions [peculiarly within a party's power to produce and testimony that would elucidate the transaction] was lacking.

21. Pennewell v. United States, *supra* note 19, 122 U.S.App.D.C. at 333, 353 F.2d at 871.

22. Billeci v. United States, *supra* note 19, 87 U.S.App.D.C. [274] at 278–279, 184 F.2d [394] at 398–399; McGuire v. United States, *supra* note 19, 84 U.S.App.D.C. [64] at 65–66, 171 F.2d [136] at 137–138; Egan v. United States, *supra* note 19, 52 App.D.C. [384] at 396, 287 F. [958] at 969–970.

The view stated in *Wynn* and *Pennewell* was refined when the problem of counsel's comment came more directly before the court in Gass v. United States, 135 U.S.App.D.C. 11, 19–20, 416 F.2d 767, 775–776 (1969). It is there stated:

We think, however, that for the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness, an advance ruling from the trial court

11. Since the factual situations will vary from case to case it seems impossible, however much one would wish to be more helpful, to try to prescribe a definite guideline. The problem is one which must be left in large part to the sound judgment of the trial judge.

12. In light of the decision I reach, I need not discuss the situation where it might be necessary for the party to explain to the trial judge why the witness is not called, assuming the witness was peculiarly within the party's power to produce and would elucidate the transaction.

should be sought and obtained.[47] We think, too, that if such argument is to be permitted, an appropriate instruction should be given defining for the jury the conditions under which the inference might be properly drawn. Only by such a practice can the risk of vitiating the entire trial by improper argument be avoided, and can the jury be informed sufficiently to enable it to intelligently discharge its function in that regard.

47. Compare our similar suggestion in Wynn v. United States, *supra* note 43, 130 U.S.App.D.C. at 64–65, 397 F.2d at 625–626. This case, however, was tried before *Wynn* was decided.

The inference above referred to of course was that the testimony would be unfavorable. The fact is, however, that the significance of the absence of a witness is not confined to an inference that if produced his testimony would be unfavorable to the party who has the power to produce him. That the court was not required in this case, for example, to instruct that such an inference could be drawn I think does not preempt the permissibility of comment upon the absence of the informer. Counsel should not be precluded from all comment, though he is not authorized to go so far as to argue that the testimony would be unfavorable. Lack of a particular witness' testimony might often indicate a weakness in the case which can properly be called by counsel to the jury's attention. The testimony about the witness is before the jury through other witnesses and is part of the over-all factual situation. In my view counsel should not be required to be silent with respect to the facts, though not permitted to go so far as to urge the inference of unfavorable testimony.

Argument of counsel is on quite a different legal level from an instruction of the court granting to the jury the right to draw the inference of unfavorable testimony. Such an instruction has the weight of law, even when it only permits and does not require the inference, whereas counsel's argument is only that. In analyzing the total evidentiary situation counsel is not confined to those matters as to which he is entitled to the support of an instruction. I see no reason, therefore, why counsel should be prohibited in such a case as this from referring to the fact that the Government did not support its case by the testimony of the informer.

Counsel here, however, desired to go further and urge to the jury that the informer's testimony would have been adverse to the Government. We are constrained to say that our prior decisions, particularly *Gass*, precluded this. Counsel's contention of a right to make other comment about the informer's absence was not explicitly involved in the ruling sought. For this reason we cannot fault the court in omitting sua sponte to go beyond the ruling requested, although it is no doubt true as a practical matter that counsel was led to assume that the ruling as made prohibited any comment on the absence of the informer. I think he was entitled to comment upon failure of the Government to call the informer as a witness, even though not entitled to urge upon the jury the right to draw an inference that the informer's testimony would have been unfavorable to the Government. However, though the court's ruling had the effect of restricting counsel's argument more than I think was appropriate, I would not reverse for that reason. Considering the evidence as a whole the restriction cannot be said to have constituted prejudicial error. In so deciding I note particularly that the defense of alibi was contradicted by the testimony of four witnesses.

Affirmed.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (concurring):

I join unreservedly in Parts I, II and III of Judge FAHY'S learned opinion. I agree, too, with the result reached in Part IV, and with much of the supporting reasoning; more specifically, I share three of the main Part IV conclusions unqualifiedly. Assuming his amenability to a subpoena, the uncalled informer,

as a special agent for the Government in the criminal transactions alleged, was, I think, "peculiarly" available to the Government within the purview of the missing witness rule.[1] Moreover, the informer's testimony, it seems clear, would not have been merely cumulative.[2] And in consequence of the informer's recent relationship with the Government, it would appear that the right to invoke the rule was not waived by defense counsel's refusal to attempt production of the informer as his own witness.[3]

In other respects, however, my resolution of the Part IV problem follows a somewhat different course. The comments which follow serve to indicate my views and the reasons why I cannot accept appellant's missing witness argument.

### I

The missing witness rule, where applicable, enables an inference that exerts impeaching though not probative force.[4] "The nonproduction of evidence," said Dean Wigmore, "that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause."[5] This is because "[t]he failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party."[6] By the same token, "the inference is based, not on the bare fact that a particular person is not produced as a witness, but on his nonproduction when it would be natural for him to produce the witness if the facts known by him had been favorable."[7]

It must follow, from this rationale of the rule, that the test for its application is the naturalness, under all circumstances, of an unfavorable inference from a party's nonproduction of the witness. I certainly agree with Judge Fahy that the missing witness doctrine is not "a rule of broad or rigid application whenever an

1. This conclusion draws support from United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948), where the facts were similar to those here, and from Stewart v. United States, 135 U.S.App.D.C. 274, 278–279, 418 F. 2d 1110, 1114–1115 (1969), where the problem was posed but ultimately dropped out of the case. See also Brown v. United States, 134 U.S.App.D.C. 269, 271 n. 3, 414 F.2d 1165, 1167 n. 3 (1969); United States v. Jackson, 257 F.2d 41 43–44 (3d Cir. 1958). As Judge Fahy explains (*supra* p. 232), Richards v. United States, 107 U.S.App.D.C. 197, 275 F.2d 655, cert. denied, 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960), presented a different situation.

2. Aside from Agent Collins, the informer was the only eyewitness to the activities charged to appellant. By the same token, the Government's case beyond Collins' testimony was entirely circumstantial. Thus the informer was in excellent position to "elucidate the transaction," *e. g.*, Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893), by either confirming or disputing Collins' version, as no other witness for the Government apparently could.

3. I agree fully with Judge Fahy that a party bears no duty to his opponent to call a witness whose relationship to the latter forecasts uncertain and possibly damaging testimony. See, *e. g.*, Mammoth Oil Co. v. United States, 275 U.S. 13, 52, 48 S.Ct. 1, 72 L.Ed. 137 (1927).

4. With the discussion in text *infra* at notes 5–7, compare the discussion in text *infra* at notes 19–22.

5. 2 J. Wigmore, Evidence § 285 at 162 (3d ed. 1940) (emphasis in original omitted). That we have accepted as the theory sustaining the missing witness rule. Stewart v. United States, *supra* note 1, 135 U.S.App.D.C. at 279, 418 F.2d at 1115 (supplemental opinion).

6. 2 J. Wigmore, Evidence § 285 at 162 (3d ed. 1940). See also Graves v. United States, *supra* note 2, 150 U.S. at 120–121, 14 S.Ct. 40, 37 L.Ed. 1021. Compare Clifton v. United States, 45 U.S. (4 How.) 242, 247, 11 L.Ed. 957 (1846).

7. 2 J. Wigmore, Evidence § 286 at 166 (3d ed. 1940).

adversary fails to call a witness peculiarly within his power to produce who might have some knowledge of the facts involved."[8] That is evident from judicial holdings that the doctrine does not apply where the witness is unimportant,[9] or is biased against the noncalling party,[10] or his testimony would be cumulative or inferior to testimony already utilized,[11] or the testimony would be privileged.[12] The principle reconciling these decisions is that an unfavorable inference cannot be justified unless it can be said with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony. And "the party affected by the inference may of course explain it away by showing circumstances which otherwise account for his failure to produce the witness."[13]

I agree, too, that the trial judge has a supervisory role in missing witness cases. As in instances of other sought-after inferences, it is the court's function to determine whether a jury could appropriately deduce from the underlying circumstances the adverse fact sought to be inferred, leaving it for the jury to say whether the inference actually ought to be drawn in the particular case.[14] The noncalling party's explanation suffices, and the missing witness rule is properly rejected, where the trial judge is "satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for nonproduction."[15] But the judge's discretion has its normal limitations and, in my view, it cannot redeem a refusal to abide by the missing witness rule where its preconditions are plainly met and the failure to call the witness is unexplained or inadequately explained—in sum, it cannot shield an exclusion of an inference which under governing rules a party was rightfully entitled to utilize.

## II

In the litigation at bar, as certainly in a great many instances of missing witnesses, there might have been reasons why the absent witness was not called. Here, as on other occasions, those reasons, if revealed to the court, conceivably might have dispelled any notion that the failure to call was an implied admission

8. *Supra* p. 233. See also Morton v. United States, 79 U.S.App.D.C. 329, 332, 147 F.2d 28, 31, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945), where we pointed out "that evidence and witnesses [may] be sifted and selected with a view to economy of trial-time and the better understanding of the case by the jury. No useful purpose is served by using a scattergun."

9. Brown v. United States, *supra* note 1, 134 U.S.App.D.C. at 270–271 n. 2, 414 F.2d at 1166–1167 n. 2; Morton v. United States, *supra* note 8, 79 U.S.App. D.C. at 332 n. 11, 147 F.2d at 31 n. 11, quoting 2 Wigmore, Evidence § 287 at 168–169 (3d ed. 1940).

10. Jarrell v. State, 251 Ala. 50, 36 So.2d 336, 341 (1948) (failure to call witness who had already testified for prosecution) ; Sterling v. McKendrick, 134 So. 2d 655, 658 (La.App.1961) (failure to call adversary) ; State v. De Paola, 5 N.J. 1, 73 A.2d 564, 574 (1950) (failure to call wife, who was hostile).

11. Brown v. United States, *supra* note 1, 134 U.S.App.D.C. at 270–271 n. 2, 414 F.2d at 1166–1167 n. 2; Morton v. United States, *supra* note 8, 79 U.S. App.D.C. at 332 n. 11, 147 F.2d at 31 n. 11; Cote v. Palmer, 127 Conn. 321, 16 A.2d 595, 600 (1940) (failure to call eight-year-old child).

12. Graves v. United States, *supra* note 2, 150 U.S. at 121, 14 S.Ct. 40, 37 L.Ed. 1021 (failure to call wife) ; Hopkins v. State, 11 Okl.Cr. 385, 146 P. 917 (1915) (failure to call codefendant).

13. 2 J. Wigmore, Evidence § 290 at 178 (emphasis in original omitted). See also Stewart v. United States, *supra* note 1, 135 U.S.App.D.C. at 279–280, 418 F.2d at 1115–1116 (supplemental opinion).

14. See In re Dunbier's Estate, 170 Neb. 541, 103 N.W.2d 797, 804 (1960) ; Lantini v. Daniels, R.I., 247 A.2d 298, 302 (1968) ; National Life & Accident Ins. Co. v. Eddings, 188 Tenn. 512, 221 S.W.2d 695, 697–698 (1949).

15. 2 J. Wigmore, Evidence § 290 at 178.

of weakness in the party's case.[16] Where there are such reasons, and they are produced and satisfy the trial judge on plausibleness, the judge should decline a request for a missing witness instruction, and should also forbid adverse comment to the jury on the absence of the witness.[17]

In the case before us, however, the Government did not justify its failure to call the informer.[18] Since only Collins, of the four narcotics agents, was an eyewitness to the drug transactions for which appellant was on trial, it seems natural enough to infer that the Government would have called the informer but for a feeling that his testimony would leave something to be desired. He was the one witness who could have corroborated Collins' testimony directly. No interest in maintaining the secrecy of his name or supposed address was manifested; the Government made both available to appellant. These circumstances, it seems to me, were sufficient to lay an ample predicate for appellant's invocation of the missing witness rule. When a party neglects an acceptable showing as to why he did not call the witness, his opponent, I believe, cannot be deprived of the benefits of the rule by mere assumption that the noncalling party may have had reasons sufficient to negate an adverse inference.

While I believe that appellant was entitled to the normal benefits of the miss-

ing witness rule, I nonetheless concur in affirmance of his conviction. The office of the rule is narrow, its scope is limited; it permits only an inference that the testimony of the uncalled witness would have been unfavorable to the noncalling party.[19] As to any matter to which the absent witness could have testified, the inference may diminish the value of the noncalling party's evidence, and may add strength to his opponent's evidence, but that is its maximum effect.[20] "The inference does not affect indefinitely the merits of a whole cause, * * * but affects specifically and only the evidence in question." [21] Moreover, the inference does not substitute for proof; its reach is not equivalent to independent evidence of any fact otherwise unproved.[22]

Here the Government's case, though partly circumstantial, was strong. There was Collins' direct testimony as to the alleged transactions, supported indirectly but firmly by the testimony of two other agents. There was also the testimony of each of the four agents contradicting appellant's alibi. An unfavorable inference from the informer's absence conceivably might have reduced the impact of the Government's proof that there was illegal drug trafficking on the occasions in question, but it could not have generated affirmative evidence that they did not occur.[23] Such an inference might also have diluted the testimony that appellant was the trafficker, and at

---

16. Compare Stewart v. United States, *supra* note 1, 135 U.S.App.D.C. at 279–280, 418 F.2d at 1115–1116 (supplemental opinion).

17. See *id.*

18. Government trial counsel did allude to a feeling that the informer's testimony was cumulative and that harm might befall him, but neither of these points was accepted by the trial judge as a basis for his ruling.

19. *E. g.*, Graves v. United States, *supra* note 2, 150 U.S. at 121, 14 S.Ct. 40, 37 L.Ed. 1021; Wynn v. United States, 130 U.S.App.D.C. 60, 64–65, 397 F.2d 621, 625–626 (1967).

20. In re Dunbier's Estate, *supra* note 14, 170 Neb. at 549–550, 103 N.W.2d at 804;

National Life & Accident Ins. Co. v. Eddings, *supra* note 14, 221 S.W.2d at 698–699.

21. 2 J. Wigmore, Evidence § 290 at 179 (3d ed. 1940).

22. United States v. Roberson, 233 F.2d 517, 519–520 (5th Cir. 1956); Gafford v. Trans-Texas Airways, 299 F.2d 60, 63 (6th Cir. 1962); National Life & Accident Ins. Co. v. Eddings, *supra* note 14, 221 S.W.2d at 698–699. See also Annot., 70 A.L.R. 1326 (1931).

23. That is because the defense offered no independent evidence challenging the drug transactions, as distinguished from the identity of the trafficker. See text *supra* at note 22.

the same time might have aided the alibi, but hardly in decisive fashion. For in preference to the testimony of three alibi witnesses that appellant was not the offender, the jury accepted the testimony of four narcotics agents that he was; the jury accepted, too, the testimony of one of the agents that appellant twice peddled narcotics. With so much direct evidence to select from, the role of an inference would scarcely have loomed large. And with the jury fully cognizant of the informer's collaboration with the agents in implicating appellant, it is problematical that it would have drawn an inference that the informer's testimony would have disfavored the Government.

These, it seems to me, are the probabilities; and a decision as to whether judicial error engendered prejudice requiring reversal is necessarily an appraisal of the probabilities. The argument that prejudice flowed from the trial court's refusal of the requested comment and instruction on the informer's absence thus leaves me unpersuaded. Viewed realistically and balanced, the probabilities, in my judgment, do not favor appellant sufficiently to warrant reversal.[24]

ROBB, Circuit Judge (concurring):

I concur in the affirmance of the judgment and in Parts I, II, and III of Judge FAHY'S opinion. I also agree that the district court was correct in refusing to give a missing witness instruction; but my reasons for reaching this conclusion are different from those of my colleagues.

The record discloses that on the second day of the trial, a Thursday, counsel for the defendant developed on cross examination of a narcotics agent that the name of the informer was Daniel Cole, that he lived in the 700 block of Morton Avenue, the address being 710, 712 or 714 Morton Avenue. The agent testified that he had not seen the informer for about a month and a half and therefore could not say where he lived at the time of trial; however, the testimony certainly gave the defendant information that would have led him to the witness if it had been followed up. Although the trial continued until the following Monday, counsel for the defendant made no attempt to locate the witness either by further inquiry, or by asking the government to produce him, or by asking the court for a subpoena. On Monday, after both sides had rested, counsel stated to the court:

> "If there is such a witness, I wouldn't doubt for a moment he could have been found within an hour. Morover, if Your Honor please, if we were to ask for the witness, this was entirely in violation of our own defense."

Counsel requested "an instruction on the missing witness" and declined the court's offer to reopen the case so that counsel might locate the witness.

My interpretation of the record is that the witness was available to the defendant but that the defendant's counsel deliberately chose not to seek him out. Counsel carefully refrained from urging strenuously that the witness be produced; his cry for help was so muted as to be almost inaudible. I think it is a fair inference that counsel did not want the witness but hoped to take advantage of a missing witness instruction, or a claim of error if the instruction was refused. Under the circumstances I do not think the defendant is in a position to complain because the instruction was not given. Having deliberately rejected an opportunity to produce a witness a defendant should not be permitted to complain that the witness is missing.

24. Compare Brown v. United States, *supra* note 1, 134 U.S.App.D.C. at 272, 414 F.2d at 1168; Pennewell v. United States, 122 U.S.App.D.C. 332, 333, 353 F.2d 870, 871 (1965). See also Gass v. United States, 135 U.S.App.D.C. 11, 19, 416 F.2d 767, 775 (1969).