IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015


**STATE OF TENNESSEE v. ANTHONY B. WHITAKER**


**Appeal from the Criminal Court for Sullivan County**
**No. S61,024    Robert H. Montgomery, Jr., Judge**

_____


**No. E2014-02330-CCA-R3-CD – Filed September 4, 2015**

_____


Following a jury trial, Anthony B. Whitaker ("the Defendant") was convicted of aggravated statutory rape. On appeal, the Defendant argues that the trial court erred when it did not give the jury a missing witness instruction. Additionally, the Defendant claims that the language in the presentment was deficient because the presentment did not include "recklessly" as a culpable mental state. After review of the record and applicable law, we affirm the judgment of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J. delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Kyle D. Vaughn, Kingsport, Tennessee (on appeal); Stephen M. Wallace, District Public Defender; and Justin Hutton, Assistant District Public Defender, Blountville, Tennessee (at trial), for the Appellant, Anthony B. Whitaker.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and William Harper and Emily Smith, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

## Factual and Procedural Background

The Sullivan County Grand Jury issued a presentment charging the Defendant with one count of aggravated statutory rape against M.T.[1] and one count of aggravated statutory rape against T.K. The morning of trial, the State dismissed the charge of aggravated statutory rape against M.T. because the State was unable to subpoena M.T.

Based upon the State's claim that M.T. was unavailable, the Defendant requested that the trial court give the jury a missing witness instruction "if the proof shows that [the instruction is warranted]." Prior to trial, the State presented the testimony of criminal investigator Joe Felty, who worked for the Sullivan County District Attorney's Office. Mr. Felty stated that, in his attempts to locate M.T., he discovered that M.T.'s mother had moved to Bristol, Virginia, and that M.T. had been placed in protective custody with her boyfriend's mother, Sharon Dugger. Mr. Felty obtained Ms. Dugger's contact information and unsuccessfully attempted to contact both M.T. and Ms. Dugger and to have them served. Mr. Felty also learned that M.T.'s mother was scheduled to appear in court in Washington County. Mr. Felty traveled to Washington County to meet with her, but M.T.'s mother failed to appear in court. On cross-examination, Mr. Felty admitted that he was given an address purported to belong to Ms. Dugger but that he did not drive to the address or personally try to serve a subpoena at the address. Instead, he gave the address to the assistant district attorney handling the Defendant's case. The trial court found that the State had "made extensive efforts" to subpoena M.T. and denied the Defendant's request for a missing witness instruction.

Testimony at trial showed that, on the day of the offense, T.K. and M.T. skipped school and walked to the Twin Oaks apartment complex in Bristol, Tennessee. There, they met the Defendant, who was an acquaintance of M.T. The Defendant invited them into his apartment, where they all "just basically chilled for a minute." While T.K. was in the apartment, the Defendant asked T.K. ten or fifteen times to have sex with him. T.K. refused and told the Defendant that she was only sixteen years old. Even after learning T.K.'s age, the Defendant continued to ask her to have sex with him. Eventually, T.K. agreed, and they engaged in vaginal intercourse in the Defendant's bedroom. M.T. remained in the living room.

The next day, T.K. returned home. T.K. told her parents what had happened, and her parents contacted the police. T.K. was taken to Bristol Regional Medical Center,

---

[1] Consistent with the policy of this court, victims of sexual offenses are identified by their initials.

where a rape kit was performed. The rape kit was sent to the Tennessee Bureau of Investigation ("TBI") for analysis, and semen was found in T.K.'s vaginal swab.

Officers also went to the Defendant's apartment and collected a sample of the Defendant's DNA. Said sample was sent to the TBI for analysis, and the results determined that the Defendant's DNA matched the DNA found in T.K.'s vaginal swab.

After T.K.'s testimony, the Defendant again requested that the trial court give the jury a missing witness instruction, and the trial court denied the request. Following deliberations, the jury convicted the Defendant as charged. The trial court sentenced the Defendant to two years and six months' incarceration. This timely appeal followed.

### Analysis

#### *Missing Witness Instruction*

On appeal, the Defendant argues that the trial court erred when it failed to give the jury a missing witness instruction regarding the absence of M.T. In support of his argument, the Defendant contends that M.T. had knowledge of facts material to the case because she was present when the crime took place. He further claims that, because M.T. was the victim in the second count of the presentment, she had a special relationship with the State which naturally inclined her to testify in favor of the State. Finally, the Defendant argues that the State did not make adequate efforts to locate M.T. because they knew the address where M.T. was living but did not attempt to serve her with a subpoena there.

Before a missing witness instruction is warranted, "the evidence must show that [1] the witness had knowledge or material facts, [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party; and [3] that the missing witness was available to process of the Court for trial." State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984) (quoting Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979)). "[W]hen it can be said 'with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony,' an inference may be drawn by the jury that the testimony would have been unfavorable." Id. at 88-89 (quoting Burgess v. United States, 440 F.2d 226, 237 (D.C. Cir. 1970)); see also 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 42.16. However, the inference is not appropriate when the proof fails to establish all three of the Delk factors. See Francis, 669 S.W.2d at 88 n.3. Due to the "potentially critical effect of the missing witness rule," the Delk requirements must be strictly construed. Id. at 89.

In this case, the trial court found that the State had "made extensive efforts" to subpoena M.T. with no success. Accordingly, she was not available to the process of the

court. Further, there is no proof that the State had any apprehension about M.T.'s testimony. In fact, the State's "extensive efforts" to subpoena M.T. were motivated by the need for M.T.'s testimony to support the second count in the presentment. M.T.'s failure to appear in court compelled the State to dismiss that count of the presentment. Therefore, we cannot say "with reasonable assurance that it would have been natural for [the State] to have called [M.T.] but for some apprehension about [her] testimony." See Francis, 669 S.W.2d at 88-89. Therefore, the Defendant's claim is without merit.

## *Sufficiency of the Presentment*

The Defendant claims that the trial court erred in overruling the Defendant's motion to dismiss the presentment for "failing to apprise the Defendant of the mental states attendant to the charges of aggravated statutory rape." Specifically, the Defendant argues that, because the Tennessee Pattern Jury Instructions include recklessly, knowingly, and intentionally as culpable mental states for the crime, failure to include "recklessly" in the presentment denied the Defendant the opportunity "to construct an adequate defense."[2] The State argues that the presentment was sufficient because the statute defining aggravated statutory rape does not include a mental state. We agree with the State.

As a preliminary matter we note that, although the Defendant claims the trial court failed to grant his motion to dismiss, there is no such motion in the record. Prior to trial, the Defendant simply objected to the trial court's instructing the jury as to the reckless mental state because the language of the presentment listed "knowingly and intentionally" but did not include "recklessly" as a mental state. He did not ask the trial court to dismiss the presentment. The trial court found that the Defendant had been "properly notified as to what the crime is." Further, the trial court noted that the statute defining aggravated statutory rape did not include a mental state and concluded that the inclusion of "knowingly and intentionally" in the presentment was simply "surplusage."

Ordinarily, failure to raise an objection to a defect in the presentment prior to trial results in waiver. Tenn. R. Crim. P. 12(b)(2)(B), (f). However, the waiver rule does not apply when the claim alleges that the presentment failed to include an essential element of the offense. Tenn. R. Crim. P. 12(b)(2)(B); State v. Perkinson, 867 S.W.2d 1, 6 (Tenn. Crim. App. 1992). A culpable mental state is an essential element unless the offense plainly dispenses with a mental element. Tenn. Code Ann. § 39-11-301(b) (2010). The aggravated rape statute neither expressly requires nor plainly dispenses with the requirement for a culpable mental state. Crittenden v. State, 978 S.W.2d 929, 930 (Tenn. 1998). Therefore, even though the Defendant failed move to dismiss the presentment

---

[2] We note that the Defendant maintained his innocence at trial and did not present a defense based on his mental state.

- 4 -

prior to trial, we may nonetheless consider the issue. Because this issue is a question of law, we apply a de novo standard of review. State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).

Both the United States and Tennessee Constitutions require that a charging instrument inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9; see also State v. Hammonds, 30 S.W.3d 294, 297 (Tenn. 2000). Our supreme court has held that the charging instrument must "contain a complete description of such facts and circumstances as will constitute the crime." Tipton v. State, 28 S.W.2d 635, 636 (Tenn. 1930). Generally, "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." Hill, 954 S.W.2d at 727.

Additionally, the form of indictments is prescribed by Tennessee Code Annotated section 40-13-202, which states:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. []

At common law, indictments were subject to strict pleading requirements because the elements of the offenses were not easily ascertained by reference to a statute. Hill, 954 S.W.2d at 728. However, today courts approach challenges to charging documents "'from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" Id. (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir. 1978)). Generally, charging documents must allege the material elements of the offense, and the "touchstone for constitutionality is adequate notice to the accused." Id. at 729. Specific reference to the statute defining the offense may be sufficient to place a defendant on notice of the offense with which he is charged. Ruff v. State, 978 S.W.2d 95, 97 (Tenn. 1998).

Under modern statutes, a culpable mental state is an essential element of the offense "unless the definition of [the] offense plainly dispenses with a mental element." Tenn. Code Ann. § 39-11-301(b) (2010). "If the definition of an offense . . . does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." Tenn. Code Ann. § 39-11-301(c) (2010). Consequently, the Tennessee Supreme Court has held that, when an offense neither

expressly requires nor plainly dispenses with the requirement for a culpable mental state, a charging document which fails to allege any mental state is sufficient so long as:

> (1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;
>
> (2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and
>
> (3) the mental state can be logically inferred from the conduct alleged.

Hill, 954 S.W.2d at 726-27.

Aggravated statutory rape is defined as "the unlawful sexual penetration of a victim by the defendant . . . when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c) (2010). The presentment in this case states:

> The Grand Jurors for Sullivan County, Tennessee being duly sworn and empaneled, upon their oath, present and say that ANTHONY B. WHITAKER about December 12, 2011, in the State and County aforesaid and before the finding of this Presentment, did unlawfully, feloniously, knowingly and intentionally engage in sexual penetration of [T.K.], a person at least thirteen (13) years of age but under the age of eighteen (18), the said ANTHONY B. WHITAKER being at least ten (10) years older than [T.K.], contrary to Tennessee Code Annotation, Section 39-13-506, a Class D Felony, and Against the peace and dignity of the State of Tennessee.

We believe the presentment met the requirements set out in Hill. The language of the presentment precisely tracked the language of the statute, included a specific reference to the statute defining aggravated statutory rape, and stated the county where and a date upon which the offense allegedly occurred. Consequently, it provided the Defendant with adequate notice of the offense alleged, gave the court adequate basis for entry of a judgment, and protected the Defendant from double jeopardy. Additionally, the language of the presentment was clear and concise, meeting the requirements of Tennessee Code Annotated section 40-13-202.

As to the third Hill requirement, the presentment included the mental states "knowingly" and "intentionally." We do not believe the exclusion of the term

- 6 -

"recklessly" constitutes a fatal defect. As noted above, the statute defining aggravated statutory rape neither specifies nor plainly dispenses with a culpable mental state. Tenn. Code Ann. § 39-13-506(c) (2010). As such, intent, knowledge, or recklessness will suffice to establish the culpable mental state. Tenn. Code Ann. § 39-11-301(c) (2010); <u>Crittenden</u>, 978 S.W.2d at 930. "Recklessly" is encompassed by the definitions of "knowingly" and "intentionally." Tenn. Code. Ann. 39-11-301(2) (2010). Thus, the culpable mental state of "recklessly" could be inferred from conduct alleged in the presentment as a person who acts intentionally and knowingly also acts recklessly. <u>See id.</u>, Sentencing Comm'n Comments. Therefore, the presentment gave the Defendant adequate notice of the charges against him and is therefore valid.

## Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE