Filed 5/28/26  P. v. Perez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Respondent,<br><br>v.<br><br>IVAN CISNEROS PEREZ,<br>Defendant and Appellant. | C101306<br><br>(Super. Ct. No. LOD-CR-FE-2023-0001646) |

Following a jury trial, Defendant Ivan Cisneros Perez was convicted of several sex offenses.  He now contends the trial court prejudicially erred in failing to instruct the jury on character evidence pursuant to CALCRIM No. 350.  We find no error and thus affirm.

**BACKGROUND**

For purposes of the instant appeal, it suffices to summarize the facts as follows.

Perez was disabled; he used a wheelchair, was unable to make his own meals, and did not work.  He lived with different relatives at different times.  Many of these relatives had young children living in the home during his stay.

One of Perez's aunts was a stay-at-home mother with two daughters including Johanna.  Perez lived in his aunt's home for more than two years, and he was still living there as of May 18, 2019.  Perez slept on a living room couch, but he had his clothes in Johanna's bedroom.  Perez spent time at the house playing video games and watching

1

movies.  There were times when Perez was alone at home with Johanna.  By the time Johanna was 11 years old, Perez had repeatedly touched her inappropriately.

Perez also lived with another aunt and her family for some period of time in 2013 and again in 2017.  This second aunt had two daughters:  Maria and Michelle.  Maria and Michelle spent time alone with Perez; they liked to watch movies together.  When Maria was between nine and 12 years old, Perez repeatedly touched her inappropriately.  Sometime around 2017, when Michelle was not more than eight years old, Perez touched her inappropriately.

Perez testified in his own defense and denied the allegations against him.  Several family members also testified on his behalf.

A cousin testified that Perez lived with her from 2013 until 2015, then lived there again during the summer of 2017 and for one month at the end of 2019.  This cousin never saw anything between Perez and Maria and Michelle that caused her to worry; they played video games and joked with each other.

In 2017, the cousin's stepdaughters visited for the summer and lived with her and Perez.  The stepdaughters were nine and 15 at the time.  The stepdaughters were also there in 2019.  The cousin never saw anything between Perez and her stepdaughters that caused her concern or to think Perez might be doing anything inappropriate.  There were times Perez was alone with both of the stepdaughters.  Each stepdaughter testified that Perez never did anything inappropriate or that made her feel uncomfortable with him.  Neither girl was ever individually alone with Perez.

Perez lived with his brother from 2012 to 2013, again from 2015 to 2017, and the last time from 2018 to October 2019.  His brother's daughter was about eight or nine years old in 2013.  His brother never saw anything between Perez and the brother's daughter that caused him concern.  The daughter testified Perez lived with her family off and on when she was between nine and 14 years old.  She said that she spent time alone

2

with Perez and thought "he was a nice person." Perez never made her uncomfortable or touched her inappropriately.

Perez also lived with an uncle from January 2020 until he was arrested. This uncle testified that his niece spent time alone with Perez and the uncle was never concerned for her safety. The niece testified that she spent time with Perez when she was about 13 and 14 years old and he never did anything that made her feel uncomfortable, never did anything sexual toward her, never did anything inappropriate, and never "creep[ed] her out."

A jury found Perez guilty of seven counts of lewd acts upon a child under 14 years of age in violation of Penal Code section 288, subdivision (a),[1] and not guilty of a lewd act upon a child who was 14 or 15 years of age in violation of section 288, subdivision (c)(1) (count eight).

The trial court sentenced Perez to an aggregate prison term of 45 years to life. Perez timely appealed.

## DISCUSSION

Perez contends the trial court erred in failing to instruct the jury on character evidence pursuant to CALCRIM No. 350. According to Perez, an instruction on character evidence was appropriate because he introduced good character evidence at trial that he had a trait for "lack of sexual deviance." We are not persuaded.

A. Additional Background

During the jury instruction conference, counsel for Perez requested the court instruct the jury on CALCRIM No. 350 (Character of Defendant),[2] arguing his witnesses

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    CALCRIM No. 350 provides: "You have heard testimony that the defendant (is a *<insert character trait relevant to crime[s] committed>* person/ [or] has a good reputation

3

established "that he has been around children alone and has not been inappropriate sexually with them." The court noted that counsel did not ask his witnesses about Perez's character or reputation. Citing to *People v. McAlpin* (1991) 53 Cal.3d 1289 (*McAlpin*), counsel argued such questions were not necessary when he otherwise established that Perez has been around other minor girls and has a "[l]ack of sexual deviance" character trait.

Counsel for Perez also noted that in *McAlpin*, the court seemed to suggest such testimony could also constitute lay opinion testimony. The court agreed that under the circumstances CALCRIM No. 333 (Opinion Testimony of Lay Witness) was a more appropriate instruction.[3] The court further found that the testimony by family members who said Perez did not molest them in any way did not fit the criteria for giving CALCRIM No. 350 because it "is not the same as a community member coming in and

---

for *<insert character trait relevant to crime[s] committed>* in the community where (he/she) lives or works). [¶] Evidence of the defendant's character for *<insert character trait relevant to crime[s] committed>* can by itself create a reasonable doubt [whether the defendant committed *<insert name[s] of alleged offenses[s] and count[s], e.g., battery, as charged in Count 1>*]. However, evidence of the defendant's character for *<insert character trait>* may be countered by other evidence of (his/her) character for the same trait. You must decide the meaning and importance of the character evidence. [¶] [If the defendant's character for certain traits has not been discussed among those who know (him/her), you may assume that (his/her) character for those traits is good.] [¶] You may take that testimony into consideration along with all the other evidence in deciding whether the People have proved that the defendant is guilty beyond a reasonable doubt."

[3] The court ultimately instructed the jury with CALCRIM NO. 333, which provides: "(A witness/Witnesses)[, who (was/were) not testifying as [an] expert[s],] gave (his/her/their) opinion[s] during the trial. You may but are not required to accept (that/those) opinion[s] as true or correct. You may give the opinion[s] whatever weight you think appropriate. Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

4

saying that he never exhibited any of these types of — it's a family member, somebody that's almost a sister to him. It's not the community standard." The court refused to instruct the jury on CALCRIM No. 350 but told counsel that he could argue the point as to why the instruction applies.

During closing arguments, leading up to a discussion about reasonable doubt, counsel reminded the jury of the defense witnesses who all testified that they had no concerns about Perez; "So [Perez's brother's daughter], … , the two brothers, would all come and visit, and supposedly during some of that time when they would come to visit for a weekend, he's molesting people. But not [the brother's daughter] and not [Perez's uncle's niece] and not [Perez's cousin's stepdaughters]. [¶] And [the brother's daughter] comes in and she's bright … [W]e would play Duolingo, she says, language games, and we would do different things. Did he ever give you the creeps? No. Did he ever try to touch you? No. Did you ever see anything weird going on with him? No, nothing. [¶] So what do you do? You bring in as many people as you can and these -— all the young women that he lived with during all this time. There isn't another one."

B. Analysis

At the outset, we address forfeiture. According to the People, by requesting CALCRIM No. 350, Perez actually requested a pinpoint instruction as it "attempts to relate facts about the defendant's specific character trait" "then seeks to relate this character trait to the legal issue of reasonable doubt." The People then claim that because counsel never actually submitted a written version of CALCRIM No. 350 with language that included "lack of sexual deviance" as a character trait, Perez forfeited his current claim that the court erred in failing to instruct the jury on the pinpoint instruction. We find the People's analysis on this point to be convoluted and not in harmony with the record. The record clearly demonstrates that counsel made a timely request for the instruction during the jury instruction conference, the parties identified the relevant character trait as "lack of sexual deviance," discussed relevant case law, and discussed

5

whether the facts supported giving the instruction. Pinpoint or not, Perez requested CALCRIM No. 350 and therefore did not forfeit his current contention that the court erred in failing to instruct the jury with it. It is the *failure to request* a pinpoint instruction that forfeits the claim on appeal. (*People v. Jones* (2014) 223 Cal.App.4th 995, 1001.)

CALCRIM No. 350 instructs a jury that evidence of a defendant's particular character trait may, by itself, create a reasonable doubt as to the defendant's guilt. Upon request, a defendant is entitled to an instruction informing the jury that opinion or reputation evidence of one of the defendant's good character traits offered to prove the defendant acted in conformity with that trait should be weighed as any other fact established, and that such evidence may be sufficient to create a reasonable doubt as to his or her guilt. (*People v. Bell* (1875) 49 Cal. 485, 490; see Evid. Code, § 1102, subd. (a); see also *People v. Jones* (1954) 42 Cal.2d 219, 224 ["Proof of the good character of the defendant may be considered as a fact tending to rebut the truth of testimony of an incriminatory character which is sufficient to establish the truth of the charge against him"].) However, the trial court has no duty to instruct on an aspect of the defense that is not supported by substantial evidence. (*People v. Bohana* (2000) 84 Cal.App.4th 360, 370.) "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) We independently review whether there was substantial evidence in the record to support giving a requested instruction. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Whether in the form of an opinion, reputation, or specific instances of conduct, evidence of a person's character is generally inadmissible to prove that person's conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) In criminal cases, however, "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation" is admissible when "(a) Offered by the defendant to prove

6

his conduct in conformity with such character or trait of character[; or] [¶] (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)." (Evid. Code, § 1102, subds. (a) & (b).) Evidence of specific acts of conduct alone is inadmissible. (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310; *People v. Felix* (1999) 70 Cal.App.4th 426, 431.)

In *McAlpin*, the defendant was convicted of lewd conduct with a child under 14 years old. The trial court refused to admit the opinion testimony of three women who had dated defendant and who also had daughters. The written offer of proof for these witnesses explained that, based on their observations of "no unusual behavior either by defendant or by their daughters" during the course of their relationship with the defendant, it was their "opinion" that "defendant [was] not a person given to lewd conduct with children." (*McAlpin, supra*, 53 Cal.3d at p. 1309.) The prosecutor objected to admission of this lay opinion evidence on the ground that it violated the rule against "proving a character trait of the accused by means of specific acts." (*Ibid*.) The trial and appellate courts agreed.

Our Supreme Court concluded this was nonprejudicial error. (*McAlpin, supra*, 53 Cal.3d at pp. 1312-1313.) "A fair reading of the offer of proof shows that the women witnesses would not have limited their testimony to specific instances in which defendant had the opportunity to, but did not, molest their daughters. Instead, the witnesses proposed to testify that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children arose from that experience as a whole. Thus viewed, the proffered testimony was intended to prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children." (*Id*. at pp. 1309-1310, fn. omitted.)

7

This case presents a different situation: Perez did not elicit testimony from his witnesses on whether, based on their observations of him with their children, they had an opinion about Perez's sexual behavior towards children or about his reputation in this regard. Instead, the testimony was confined to their observations of "specific acts of 'nonmolestation,' " i.e. that Perez had the opportunity to, but did not, molest their children. *McAlpin* makes clear this type of evidence may be used as lay opinion evidence but cannot be used as proof of a character trait. (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310 & fn. 14.) The evidence presented thus did not support the requested instruction on character evidence. Accordingly, the trial court properly rejected Perez's request to instruct the jury pursuant to CALCRIM No. 350. In light of our conclusion, we need not address whether the trial court's assessment of whether family members constitute the appropriate "community" within the meaning of CALCRIM No. 350 was correct. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [appellate courts may affirm a lower court on any legal ground supported by the record].)

Even if the court erred in rejecting the instruction, however, we conclude any error was harmless. As a general matter, the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818 applies to " ' " ' incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error.' " ' " (*People v. Hendrix* (2022) 13 Cal.5th 933, 942.) Perez claims the instructional errors violated his right to present a complete defense and contributed to the verdicts. Based on these claims of federal constitutional error, Perez claims we should evaluate the purported instructional error under the *Chapman v. California* (1967) 386 U.S. 18 standard of prejudice, i.e., whether the error was harmless beyond a reasonable doubt.

Perez cites no authority for the proposition that the failure to instruct the jury with CALCRIM No. 350 implicates federal constitutional concerns or requires review under

*Chapman*.[4]  Nor does Perez cite any case that has applied that standard to a claim that there was sufficient evidence to support giving an instruction.  Historically, instructional errors that warrant application of the *Chapman* standard of prejudice include those where the instruction improperly describes or omits an element of an offense; misdescribes an alternative theory of guilt; lightens the burden of proof; infringes on a defendant's privilege against self-incrimination; raises an improper presumption; or directs a finding or a partial verdict upon a particular element.  (*People v. Hendrix, supra*, 13 Cal.5th at pp. 942-943; *People v. Aledamat* (2019) 8 Cal.5th 1, 3, 9; see also *People v. Larsen* (2012) 205 Cal.App.4th 810, 829-830.)  By contrast, when the purported error involves a legally correct instruction, but it has no application to the facts of the case (was not factually supported by evidence at trial), we review the claim under the standard in *Watson.*  (*People v. Canizales* (2019) 7 Cal.5th 591, 612-613; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130.)  Under the *Watson* standard, "we deem an error harmless unless it is 'reasonably probable' the outcome would have been different in the absence of the error."  (*Hendrix*, at p. 942.)  " ' " [A] "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' "  (*Id.* at p. 944.)

Applying the *Watson* standard here, we conclude that Perez has not shown a reasonable probability that the outcome would have been different if the court had instructed the jury with CALCRIM No. 350.  In attempting to persuade us otherwise, Perez weighs the credibility problems of Maria, Michelle, and Johanna against his own

---

[4]  Perez cites to four United States Supreme Court cases and several federal appellate cases.  We are "not bound by the decisions of the lower federal courts even on federal questions," though they are persuasive and entitled to great weight on those questions. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)  Although we are bound by decisions of the United States Supreme Court interpreting the federal Constitution, none of the cases cited by Perez address the issue here.

denial, the lack of other circumstantial evidence, and the testimony of his defense witnesses who never experienced anything untoward with him. He claims that "the good character evidence sufficed to create a reasonable doubt of guilt *by itself*." We disagree.

If instructed on CALCRIM No. 350, the jury would have been told that evidence of the defendant's character for "lack of sexual deviance" *can* by itself create a reasonable doubt but that the jury "must decide the meaning and importance of the character evidence." (CALCRIM No. 350.) Here, the jury was already instructed on similar aspects of evidence evaluation. For example, the jury was instructed that Perez was presumed to be innocent and that the People had to prove him guilty beyond a reasonable doubt; it was the jury's obligation to "impartially compare and consider all the evidence that was received throughout the entire trial." (CALCRIM No. 220.) The jury was also instructed how to evaluate direct and circumstantial evidence. (CALCRIM Nos. 223, 224.) And the jury was instructed how to evaluate conflicting evidence and witness credibility, as well as lay witness opinion testimony. Specifically, the jury was informed that it was to determine any conflict in the evidence (CALCRIM No. 302), be the sole judge of credibility and the weight to be given to each witness's testimony (CALCRIM No. 226), that it could use a witness's prior inconsistent statements in evaluating whether their testimony was believable (CALCRIM No. 318), and that it could give opinions of lay witnesses whatever weight it thought appropriate (CALCRIM No. 333). Thus, even without CALCRIM No. 350, the jury was empowered to discount the evidence of molestation in favor of Perez's denial and the version of Perez as described by the defense witnesses, if warranted.

The trial court did not restrict defense counsel's use of the defense witnesses' testimony, and, in closing argument, counsel emphasized the credibility problems of the complaining witnesses juxtaposed against the defense witnesses who never observed anything suspect. Where counsel was able to argue his theory of defense and the instructions guided the jury as to how to evaluate trial evidence, we cannot say that the

fact that the jury did not credit Perez's version over that of the complaining witnesses was because they were not instructed with CALCRIM No. 350.

Because it is not reasonably probable that the jury would have reached a different result had CALCRIM No. 350 been given, any error in failing to give the instruction was harmless.

## DISPOSITION

The judgment is affirmed.

/s/
EARL, P. J.

We concur:

/s/
RENNER, J.

/s/
FEINBERG, J.

11